## Jim Dawson v. The State.

No. 2763.  Decided November 19, 1913.

Rehearing denied December 17, 1913.

**1.—Murder—Manslaughter—Deadly Weapon—Intent to Kill.**

Where, upon trial of murder and a conviction of manslaughter, it appeared from the evidence that defendant was armed with two knives and used one of them on deceased in such a manner as to show an intent to kill, and that deceased was not armed at all, but defendant seemed to be the aggressor, it was immaterial that defendant was the smaller man, and the conviction for manslaughter was sustained.

**2.—Same—Intent to Kill—Instrument Used.**

Where, upon trial of murder, the defendant contended that he acted in self-defense, and if not in self-defense, that the instrument used was not a deadly weapon and that he would not be guilty of a higher offense at any event than aggravated assault, there was no error to admit in evidence the character of the wounds inflicted by him upon the deceased, to show the mode and manner of the use of the knife with which they were inflicted, and that the same showed an intent to kill.

**3.—Same—Evidence—Declarations of Deceased.**

Upon trial of murder and a conviction of manslaughter, there was no error in excluding the declarations of deceased which were made some time after the difficulty and were not res gestae.

**4.—Same—Misconduct of Jury—Verdict by Lot.**

Where the record on appeal showed that there was no previous agreement among the jurors to abide by the result reached upon a certain plan of balloting, the same was not a verdict by lot, and there was no error.

**5.—Same—Charge of Court.**

Where the evidence excluded the idea that defendant approached deceased to demand an explanation, there was no error in the court's failure to charge thereon.

**6.—Same—Suspending Sentence.**

The fact that the court submitted the question of suspending the sentence at the request of defendant, and the jury did not recommend it, presents no error.

Appeal from the District Court of Mitchell.  Tried below before the Hon. W. W. Beall.

Appeal from a conviction of manslaughter; penalty, three years and six months imprisonment in the penitentiary.

The opinion states the case.

*W. A. Anderson* and *L. W. Sandusky,* for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, Judge.—This is the second appeal in this case,—the opinion on the former appeal being reported in 70 Texas Crim. Rep., 8, 155 S. W. Rep., 266.  The case being reversed, he was tried again, and again convicted of manslaughter.

The evidence is recited in brief form in the former opinion, but as appellant insists that the evidence is insufficient to convict, we will state the evidence a little fuller as to the State's witness J. H. Williams. It having been shown that appellant had had a quarrel that morning in which appellant cursed deceased, claiming that he had told a lie on him, when deceased said that it was not him who lied. Subsequently they both went to the gravel pit to haul sand, when deceased approached appellant and said "he guessed it was about time for them to settle their little trouble." Appellant replied, "all right," pulled off his gloves, and went meeting deceased; they met and fought, deceased getting appellant down, when he called for Williams to pull deceased off. At this deceased got off of him, when the quarrel was renewed, appellant having a knife in his hands; deceased knocked it out of his hands, when they again fought, deceased again getting appellant down on the ground. Appellant again called to Williams to pull deceased off of him, when deceased again got off of appellant. The quarreling continued, but, Williams said, had quieted down, when appellant remarked, "I am a damn good notion to cut your throat," in an angry tone, speaking as if he meant it. Deceased replied for him not to do that; that he could not afford to do it, and commenced backing, when appellant advanced on him with an open knife in his hands and when appellant got near to deceased, deceased struck appellant with his fist and knocked him back. They then again began to fight, when appellant inflicted the knife wounds which resulted in the death of deceased. Deceased at no time had any weapon of any kind, while it appears that appellant was armed with two knives. This certainly would support a verdict of manslaughter, if the jury believed that appellant had the intent to kill, or the knife from the mode and manner of its use was calculated to produce death. Williams says that after deceased had gotten off appellant twice that the cursing kept on, Dawson, appellant, doing the most of it. Under such circumstances, it would be immaterial that appellant was the smaller man. At least, after the first encounter, when deceased had voluntarily gotten off of him when appellant called for help; two other encounters were produced by appellant continuing the quarrel, and when one knife was taken away from him, he opened another and advanced on deceased with the threat he had a good mind to cut his throat.

Dr. Willis R. Smith testified he examined the body of deceased, and said: "The wounds I found were on the anterior surface of the body, on the front surface of the body, between the fifth and sixth ribs, just below the nipple on the left side, there was a stab or punctured wound about an inch or an inch and a half in length; just below that between the seventh and eighth ribs there was a wound that went to the rib about two inches in length; over the anterior surface of the belly, over the region of the liver there were two cuts, the principal one being the longer one of the two, about two and a half inches, the lower one being about two inches, the lower one being through the abdominal

cavity, cutting about the same length into the liver, being a very shallow wound into the liver.   On the left hand, over the ribs, over the abdominal' cavity there was one that went into the abdominal cavity, but not into the intestines; over the right groin there was also a wound, there, and a wound, the one on the back, which was nothing but a skin wound, reaching from the point of this shoulder (indicating), around under the shoulder blade, (indicating), cut through the,—underneath and through the skin, yes, sir.   That was in the direction of the shoulder blade. There were none of his intestines cut at all, there was a cut in the liver, just a casual wound, but there were no wounds at all in the intestines. The first wound which I described, the depth of that wound, it punctured into and went into the heart sac, and went clear through the heart cavity, the outside of the heart, into the heart cavity.   As to what was the depth of that wound into the heart, the heart, of itself, is about, ordinarily about five-eighths of an inch—and then there is the abdominal wall, that it had to go through it and into the pockets of the heart.   The abdominal wall there, I should say, is an inch, or an inch and a quarter—the chest wall there, that is the only spot where the heart comes against the chest wall, where you can feel the heart beat; the depth of that would then be about an inch and five-eighths.   That was a fatal wound, it punctured into the heart, and the heart just simply bled itself to death.   The wound that I have described on the liver wasn't fatal at all, there was nothing about it that would have been serious.   None of the other wounds were fatal, except the wound in the heart.   Let's see, there were one, two, three, four, five, six, seven—seven wounds in all. I have not thought about it since that time, since a year ago."

Appellant objected to this testimony, on the ground that the testimony before Dr. Smith was called, already proved that deceased died from wounds inflicted by appellant; that such testimony would prejudice the jury against appellant.   Appellant's contention on the trial was, first, that he acted in self-defense; and secondly, if not in self-defense, then the knife, not being a deadly weapon per se, he would be guilty of no higher grade of offense than aggravated assault.   Such being his contention in the case, this testimony was admissible on the issue of whether from the mode and manner of the use of the knife, the intent to kill was manifest, and the court did not err in admitting it.

After deceased was cut, he requested Mr. Williams to place him in the wagon and carry him to a doctor.   Mr. Williams did this, and while on the way to town, asked Mr. Williams, "Where is the son-of-a-bitch?" meaning appellant.   Appellant desired to introduce this query in evidence, but as it was some time after the difficulty, and could shed no light on the action of either of them during the difficulties, there was no error in excluding it.

Appellant alleges misconduct of the jury, in that they arrived at their verdict by lot.   The evidence shows that the jury at first were unanimous in finding appellant guilty of manslaughter, but they were not in accord as to punishment.   Some favored five years; some two

and three, and one four years imprisonment. That several ballots were taken. Some added up the number of years each desired to inflict and a result of three and a half years obtained. All the jury say there was no previous agreement to abide by the result. That when the result was obtained, that all the jury would not at first agree to it, some still contending for five years, but that finally they agreed to three and a half years. This is not arriving at a verdict by lot within the meaning of our Code. There must have been a previous agreement to abide the result, and the evidence must show they felt bound by it, and for this reason acceded to the result. The evidence in this case discloses there was no such agreement and an agreement obtained only after much discussion and several ballots had been taken after the addition had been made.

There was no evidence calling for a charge that "if defendant approached deceased to demand an explanation," etc. The evidence excludes the idea that the meeting was brought on this way at the time death was inflicted.

The fact that the court, at the request of appellant, submitted the question of suspending the sentence, and the jury did not recommend it, nor make any return on that issue, presents no error.

We have carefully considered the record, and each ground of error assigned, and there being no error, the judgment is affirmed.

*Affirmed.*

[Rehearing denied December 17, 1913.—Reporter.]