SAM MANNING v. THE STATE.

No. 3011. Decided February 18, 1914.

1.—Murder—Evidence—Declarations and Acts of Defendant—Res Gestae.

Where, upon trial of murder, the acts and declarations of defendant with reference to the transaction, if not res gestae statements, shed light on the transaction in which the deceased lost his life, the same were correctly admitted in evidence.

**2.—Same—Charge of Court—Objections.**
    Where the charge of the court was not objected to before it was read to the jury, under the law of the Thirty-third Legislature complaints thereto made for the first time in a motion for new trial can not be considered on appeal.

Appeal from the District Court of Sabine. Tried below before the Hon. A. E. Davis.

Appeal from a conviction of murder in the second degree; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*J. W. Minton,* for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant when tried was found guilty of murder in the second degree and his punishment assessed at five years confinement in the State penitentiary.

There is but one bill of exceptions in the record, and that complains of the following proceedings had upon the trial. Frank Ellison was sworn and testified: "I know a little about the trouble or difficulty that occurred at Sam Manning's dance in December of last year. I heard some black-guarding and cursing and boards popping and crying up there. I heard Sam Manning cursing. I knew Frank Kirby, and I saw him the next morning. He was dead. It was about 11 o'clock somewhere, and along about that time—I had been asleep—I heard him (Manning) cursing his wife for a God-damned dancing slut. 'You throwed my shells away, God damn you, and if you don't help me hunt them, I will kill you all, I am going to kill Mack Ellison. My neck has been tried twice for killing two God-damed sons-of-bitches, and I am going to kill some more.' I heard, I think, about four shots before that. Defendant—We object to this testimony, and ask that it be stricken out. It is shown to be after the occurrence. Q. How long did you say that was after the last shot fired? A. It was just a few minutes after the three last shots fired, and I goes up there to see what he was hunting. Q. How long was it before you got up there to the house? A. I suppose it was ten or fifteen minutes. I went to get my boots on; I heard these boards popping and him cursing up there, and I got one of my boots sorter twisted, and when I got my boots on, I went right up there." Defendant—We object to it because it is not shown to have any connection with the alleged crime; the statements, if made, were made against third persons, made subsequent to the alleged commission of the offense with which the defendant is charged, and it is irrelevant and immaterial and prejudicial to this defendant. Court—Objection overruled. Defendant excepts.

Witness states: "During this time, he was right out in front of his gate, and had some splinters in his hand—a little light, and said, 'I am going to get me a shotgun and kill ever God-damned one of them.'" De-

fendant—We offer the same objection to this last statement. It is shown to be after the commission of the offense, not connected with the offense with which the defendant is charged, and is irrelevant, and is not a part of the res gestae. Objection overruled. Defendant excepts. Court—I believe the witness says it was within ten or fifteen minutes of the time he heard the last shots fired. Witness—It was about that time.

Witness states: "I lived about 150 steps from there, and as soon as I could get dressed I went up there, after this last shooting and fighting. I went up there, as quick as I could after the three shots fired. I did not go the closest way up to his (Manning's) house. I kinder went around. I suppose I went 200 yards before I got right up in front of his gate. I had dressed and gone this distance and it was then I heard this cursing I walked up there. Of course, I heard some cursing before I got there. As to whether or not I heard any cursing from the time I heard the last pistol shoot until I got there, will say, it was just about continuous. It was just about continuous cursing after I heard these last three shots up until I got there, and it was the hardest cursing I ever heard. As to whether or not I heard him from down at my house, will say, of course I could."

This witness was followed by J. F. Flowers who testified that shortly after he heard the shots appellant came down to the kiln where he was at work, with a shotgun in his hands, and asked if he had seen anything of Frank Kirby, the deceased. The testimony introduced prior to the testimony of Mr. Ellison showed that appellant had a dance at his house, and was drinking; that he had his pistol out in his hands; was cursing and had shot at one man who ran off, when the difficulty arose in which Kirby lost his life. The State would have Kirby a peacemaker while appellant would have him raising a difficulty with him, and advancing on him with an open knife when he fired the fatal shot. There is, and can be no question that appellant fired three or four shots that night prior to the time Kirby ran off, some of them being fired at Kirby; that Mr. Ellison is testifying to what took place immediately after appellant had fired the shots at Kirby, and just preceding the time he was seen by Flowers with a shotgun hunting Kirby. Under such circumstances, we think the testimony was admissible, if not as res gestae statements then testimony as shedding light on the transaction in which Kirby lost his life—to enable the jury to pass on the state of mind of appellant, and decide which of the two theories was the correct theory in the case. Appellant would have himself trying to preserve order, committing no overt act himself, except in defense of his life, while the testimony offered by the State, would have him, during the same transaction, not only shooting Kirby without just provocation, but assaulting and threatening others, and using his firearms in a way to show a reckless disregard of human life. There was no cessation, in so far as appellant is concerned, from the time he drew his pistol in the house

until he was seen hunting Kirby with a shotgun, and under such circumstances any and all of his acts and conduct was admissible.

This case was not tried until the 14th day of October—three months after the law in regard to filing objections to the charge before it was read to the jury, had gone into effect. This law passed by the Thirty-third Legislature went into effect July 1st of last year, and applied to all trials had after that date. (James v. State, 72 Texas Crim. Rep., 457; Ybarra v. State, 72 Texas Crim. Rep., 70. Consequently complaints as to the charge of the court made for the first time in motion for new trial, after verdict, can not be considered by us on appeal. (Acts of Thirty-third Legislature, Session Acts, p. 278.)

The judgment is affirmed.

*Affirmed.*