## R. W. HILL v. THE STATE.

### No. 2451. Decided March 25, 1902.

**1.—Assault to Murder—Self-Defense—Charge.**

On a trial for assault with intent to murder, where it appeared that the difficulty was occasioned by the prosecutor's pasturing horse stock in a pasture, to the possession of which the parties asserted adverse claims, such facts would not require a charge involving the right of defendant to protect his claim to the property against the intrusion of the prosecutor; and in such a case a charge was sufficient which instructed the jury that if defendant approached prosecutor in a peaceful manner, and inquired about the pasturing of his horses, and on that occasion prosecutor assaulted him, he would have the right to act in self-defense, but he would have no right to assault prosecutor because the latter proposed to pasture his horse in the inclosure which was claimed by both.

**2.—Same—Threats.**

On a trial for assault with intent to murder, a charge of the court upon the issue of threats which required the prosecutor to manifest his immediate intention to execute his threats by both acts and words, was not more onerous than the law requires, where the parties were quarreling and prosecutor was using both words and acts just before the shooting.

**3.—Same—Agreement of Parties as to Verdict—Oral Instruction by Court.**

On a trial for assault with intent to murder, where the jury, after being out for more than a day without agreeing upon their verdict, were informed that the parties had agreed that they might return a verdict for aggravated assault

with a fine of $200, but upon their failure to return such verdict were again brought into court and orally instructed by the judge that they were not bound by said agreement and could still return any verdict from the highest to the lowest penalty, but that it was desirable that they would reach a verdict owing to the great cost, trouble, and expense of another trial; Held, the action of defendant in entering into the agreement was tantamount to a plea of guilty of aggravated assault, a misdemeanor, and that the court, under the circumstances, had the right to orally instruct and admonish the jury as was done.

**4.—New Trial—Verdict Arrived at by Lot.**

Where the jurors, in determining the punishment to be assessed, set down the same as fixed by each individual juror, added them up and divided the agreegate sum by 12, but the jurors expressly state that they did not agree in advance of the method pursued to abide the result, and each juror expressly reserved to himself the right to call for a ballot until satisfied; and after all the ballots taken they discussed the case and finally agreed on the verdict as above ascertained. Held, the verdict was not illegal and void, and a new trial upon the ground that the verdict had been determined by lot was properly refused. Following White v. State, 37 Texas Criminal Reports, 651

Appeal from the District Court of Foard. Tried below before Hon. G. A. Brown.

Appeal from a conviction of aggravated assault; penalty, a fine of $460 and six months imprisonment in the county jail.

Appellant was charged by the indictment with assault with intent to murder J. A. Crain. The parties had had previous trouble about the possession of the land upon which they lived, and Crain's horses had been turned out of the pasture. He believed defendant had done this and had made threats against defendant. At the time of the difficulty which occasioned this prosecution, Crain testified he was returning to his home and was leading a stallion; and while in the act of passing defendant's house defendant walked out of the house and jumped in front of him and asked him where he was taking that horse. That he replied he was taking him to his dugout. "He asked what I was going to do with him, and I told him it was none of his business. He said he was going to make it his business, and called me a G—d d—n son of a bitch, and drew his pistol. I told him I was not armed, and asked him not to shoot me. He said that was the shape he wanted to find me in. I unwrapped the rope from the saddle and let the horse I was leading loose. At this time Hill fired and missed me, and I wheeled my horse to run away and Hill shot again." This last shot struck Crain behind the right ear and the bullet came out between his eyes. He was confined to his bed for about six weeks, and the sight of his right eye was almost entirely destroyed. Mrs. Hill, wife of defendant, was the only eyewitness to the shooting, and her testimony does not differ materially from that of Crain as to the facts immediately attendant upon the shooting.

*Fires & Decker, J. C. Roberts,* and *M. M. Hankins,* for appellant, filed an able and elaborate brief.

*Rob't A. John,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of an aggravated assault, and his punishment assessed at a fine of $460 and imprisonment in the county jail for six months; hence this appeal.

Appellant complains that the court should have given his special requested charge, instructing the jury with reference to appellant's right of self-defense in defending his property under articles 677, 680, Penal Code. The difficulty here arose as to the right of appellant to pasture his horse on the lands of the prosecutor, and this involved the right to the possession of said land. The difficulty itself, however, did not occur in the defense of property. Possession was a disputed question. It appears that the land had been awarded to appellant, and prosecutor had been living on that section for some time, and was still living on it. The fact that the altercation grew out of adverse claims to the possession of property would not require a charge involving the right of appellant to protect his claim to the property against an intrusion of the prosecutor. If the absolute possessory right had been in appellant, and he alone had been in actual possession of the property, and the prosecutor was about to trespass thereon, then the charge in question might have been invoked; but we do not understand that to be the status of the case here. The court gave a charge authorizing the appellant to approach prosecutor in a peaceful manner, and inquire about pasturing his horse in the inclosure claimed by him; and if prosecutor, on that account, assaulted him, he would then have the right to act in self-defense, but that he would have no right to assault prosecutor because of the fact that he proposed to pasture his horse in the inclosure which was claimed by both. We think this was sufficient.

Appellant also complains that the court should have given his special requested instruction on threats shown to have been made by the prosecutor against appellant. And he furthermore claims in this connection that the court's charge on this subject was more onerous than the law requires, in that it required prosecutor to manifest his immediate intention of executing the threats by both acts and words, whereas he contends that he could manifest his purpose by either. We think the court's charge on this subject adequately presented the law on this phase of the case. There was no controversy that the parties were quarreling just previous to the shooting, and that the prosecutor was using both words and acts. It appears that the indictment charged appellant with an assault with intent to murder, and the court instructed the jury on this subject as well as on aggravated assault.

The jury, after receiving the charge of the court, and being out about a day, reported that they could not agree. The court informed the jury that court would continue another week, and they must reach a verdict, if possible. Subsequent to this the State and defendant agreed that the jury might return a verdict for aggravated assault, and fine the defendant $200, and in accordance with the agreement of the parties the jury were brought into court and informed of this by the judge. The jury then retired, but it seems they did not readily agree. They were again

sent for, brought into court, and the judge informed them verbally that the compromise verdict submitted to them on the day before was not intended to bind their consciences, and that they were not bound to be governed thereby, but that they could disregard the agreement of the State and defendant, and reach any verdict from the highest to the lowest penalty; that it was desirable that they should reach a verdict, as the costs of the case had already amounted to a great deal, and witnesses had been summoned from other counties, and another trial would cause a great deal of trouble and expense. Appellant contends, and some of his counsel support this contention by their affidavits, that this latter instruction or admonition by the court was not agreed to. However, this is controverted by the State, and the court, in explanation of the bill of exceptions, says: "It was understood that the court should orally inform the jury of said agreement, and call their attention to the fact that the evidence was conflicting, and the court costs incurred, and which probably might be incurred hereafter, was considerable, and to inform the jury the agreement was not intended by the defendants or the district attorney or the court to dictate to them their verdict, but merely submitted the same for their consideration." This action of the court is assigned as error. Of course, the court would not have been warranted in taking this action, unless with the consent and approval of appellant. We regard the action of appellant in this matter as a withdrawal of his plea of not guilty, and entering a plea of guilty to an aggravated assault, with the consent of the State and the approval of the district judge. The naming of the amount of the fine, we take it, was merely suggestive. At any rate, such is the explanation of the court. The case thus becoming one of misdemeanor, it was competent for the court, with the consent of the parties, to instruct the jury orally, as was done. Appellant seemed anxious for the jury to reach a verdict. The State, on its part, conceded the case, as far as an assault with intent to murder was concerned, and what was done appears to have been for the advantage of appellant. That the jury, exercising their judgment, reached another verdict as to the amount of the punishment, was a matter beyond the control of the court; and this, too, seems to have been understood and agreed to by appellant, as explained by the court.

Appellant insists that the case should be reversed because the jury assessed the punishment by lot, and he shows in this connection that each juror set down the amount of the punishment he assessed. These were added up and divided by 12, which amounted to a fine of $460 and six months in the county jail. He attaches to his motion the affidavits of two of the jurors, to wit, Sampson and Fowler, to the effect: that they agreed for each man to write his verdict down, and add the whole together, and divide the aggregate amount by 12, which should be the verdict; that they then did this, and the verdict was the one given into court; that, after the first aggregate and division was made, they then made two other aggregates, and then the jury determined by a standing vote to bring in the verdict first found by counting up the

aggregate punishments and dividing by 12; and that said verdict so found by standing vote was the one brought into court. The State introduced a controverting affidavit signed by nine of the jurors. These affidavits show, substantially, that the jury agreed to aggregate the punishment assessed by each, and divide the same by 12, but did not agree in advance to abide by the result. In pursuance of the method adopted, they found three verdicts,—the first, for $460 and six months in jail; the second, for $590 and nine months in jail; and the third for $578 and eight months in jail. After they had taken these three ballots, the jury then discussed the facts and merits of the case, and then took another ballot, which resulted in a fine of $460 and six months in jail. They expressly state that they did not agree, in advance of the method pursued, to abide the result, but each juror expressly reserved to himself the right to call for a ballot until satisfied. And after all the ballots were taken they then discussed the case, and agreed on the verdict reached. Appellant contends that, notwithstanding the affidavits of the nine jurors, the affidavits of the two jurors were not controverted to the effect that they understood beforehand that the agreement was to be binding. While the jurors Fowler and Sampson both state that they agreed to arrive at their verdict by lot in the method suggested, they do not appear to state distinctly that they agreed to be bound thereby, nor do they distinctly controvert the affidavits of the other jurors that there was no agreement to be bound thereby; and they concede that other ballots were taken afterwards. It seems from these ballots that a majority of the jurors were in favor of a greater punishment; and evidently there must have been anxiety somewhere in the jury to get a lower punishment, and this result may have been superinduced by these two jurors. At any rate, viewing the affidavits, we do not believe there was an agreement beforehand to be bound by the result, as was held in the cases cited by appellant. See White v. State, 37 Texas Crim. Rep., 651.

We have examined the record carefully, and finding no reversible error, the judgment is affirmed.

*Affirmed.*