## A. E. GRIPPON v. THE STATE.

No. 14401.   Delivered October 28, 1931.
Rehearing Granted December 9, 1931.

The opinion states the case.

*Fletcher S. Jones,* of Beaumont, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

MORROW, PRESIDING JUDGE.—The possession of intoxicating liquor for the purpose of sale is the offense; penalty assessed at confinement in the penitentiary for four years.

A recital of the facts it deemed unnecessary. Suffice it to say that they are sufficient to support the verdict.

The jury, in their deliberation, after concluding that the accused was guilty of the offense charged, made several attempts to arrive at a verdict

by dividing by twelve the sum of the amount of punishment thought proper by each juror. These efforts resulted in a quotient verdict of three and a fraction years. Some of the jurors then suggested that the verdict be even three years, while others suggested that it be four years. A vote was taken upon that proposal which resulted in an equal division of the jury—six for three years and six for four years. This, it seems, was by a written ballot.

It is declared by statute that a verdict reached by lot or in any manner other than by a fair and impartial expression of the opinion of the jurors cannot stand. See article 753, C. C. P., subd. 3, 1925. A quotient verdict has been construed to be a verdict by lot. Leverett v. State, 3 Texas App., 213, and many cases collated in Vernon's Ann. Tex. C. C. P., 1925, vol. 3, p. 9, subd. 3. The fact that the members of the jury agree that each shall write upon a paper the number of years confinemtn in the penitentiary that he deems appropriate in a given case and that the aggregate be divided by twelve, the result ascertained will not be classified as a verdict by lot unless it be shown that prior to the experiment the jurors agree that the result should represent the penalty to be assessed. See Hill v. State, 43 Texas Crim. Rep., 583, 67 S. W., 506; Keith v. State (Texas Crim. App.), 56 S. W., 628; Cockrell v. State, 85 Texas Crim. Rep., 326, 211 S. W., 939; Barnard v. State, 87 Texas Crim. Rep., 365, 221 S. W., 293; McCord v. State, 105 Texas Crim. Rep., 98, 286 S. W., 1094; Harris v. State, 114 Texas Crim. Rep., 647, 26 S. W. (2d) 225; Bledsoe v. State, 111 Texas Crim. Rep., 159, 12 S. W. (2d) 227; Harris v. State, 114 Texas Crim. Rep., 647, 26 S. W. (2d) 225.

The record in the present case makes evident that in advance of the experiment there was made by the jurors no agreement that in fixing the penalty they should be bound by the result of the experiment. We are clear in the view that the penalty was not decided by lot. The remaining question is, do the facts show that the verdict rendered does not reflect a fair and impartial expression of the opinion of the jurors? The result of the experiment showed a quotient verdict of less than four years and more than three years. The jurors refused to base their verdict upon the result and took other means of reaching a conclusion by casting a ballot in which six of the jurors favored a three years penalty and six of them favored a four years penalty. It was then agreed by the members of the jury that another ballot be taken to decide whether the penalty assessed should be three years or four years; that this should be determined by a majority vote. The vote was in writing, and when canvassed, showed that seven favored four years and five favored three years. Whereupon the foreman announced that the result of the ballot was a verdict fixing the penalty at four years, which verdict was written and returned to the court as the verdict of the jury. Assuming that the evidence of the jurors

touching all of this procedure was properly before the court, which is not entirely clear, the opinion is expressed that the verdict was not shown to have been other than a fair and impartial expression of the judgment of the jurors. See Weatherford v. State, 31 Texas Crim. Rep., 530, 21 S. W., 251; Green v. State, 116 Texas Crim. Rep., 203, 34 S. W. (2d) 280.

In the case of Stockton v. State, 109 Texas Crim. Rep., 554, 5 S. W. (2d) 996, seven jurors favored two years confinement in the penitentiary without a suspended sentence and five were in favor of two years with a suspended sentence. One of the jurors suggested that the majority should control and proposed that if, upon another ballot, the majority were in favor of the suspended sentence, that all the jurors agree to two years. The verdict assessing the penalty at two years confinement in the penitentiary without the suspended sentence was approved.

In Alexander v. State, 69 Texas Crim. Rep., 23, 153 S. W., 436, eleven jurors favored a punishment of two years in the penitentiary. The twelfth favored three years. After discussion, the twelfth juror proposed that he would come to two years and one month if the other eleven would do likewise. Such an agreement was held a mere compromise of the differences of the jurors and not a void verdict. The fact that jurors in their deliberation must of necessity, by interchange of views or experiment such as that under consideration, adjust their differences by yielding their individual judgments and compromising, is illustrated by many decisions and apparently is self-evident. See notes in Corpus Juris, vol. 16, sec. 2702, in which, upon citation of many precedents, the following is stated:

"The fact that a verdict was rendered only after long consideration and was apparently the result of a compromise is not ground for a new trial, where there is no showing that it was obtained improperly. Nor will a new trial necessarily follow from the fact that a juror agrees to the verdict because the majority favor it, or because he does not wish to have a hung jury, or because he has been charged with an intention to cause a disagreement; nor will it follow because the verdict is the result of a compromise or an agreement of all the jury to recommend to mercy, or on a promise to sign a petition for a pardon. Where a verdict is the result of lot it will be set aside and a new trial will be granted; but the lottery must be clearly proved; and a new trial will not be granted because of an abortive lottery, the verdict finally being reached by proper balloting."

The action of the trial judge in receiving the verdict and overruling the motion for new trial indicates that he did not regard the testimony given on the hearing of the motion as showing other than a fair expression of the judgment of the jurors.

The judgment is affirmed. *Affirmed.*

ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—In his motion for rehearing the appellant, through his counsel, has directed attention to the complaint of the remarks of one of the state's attorneys which was not discussed in the original opinion. We quote the argument as follows:

"The defendant is a notorious bootlegger and he uses his taxicab to go to his home to get liquor and delivers it to purchasers all over Beaumont."

Prompt objection to the argument was made and exception reserved to the refusal of the court to sustain the objection. In the bill it is recited that counsel for the accused, in his address to the jury, had made no argument or remarks to the jury inviting the argument of which complaint is made. The matter was not in any way withdrawn from the consideration of the jury. In qualifying the bill, the court said that there was testimony in the record to the effect that the appellant had been bootlegging and driving a taxicab ever since the witness Richardson had known him and that he had that reputation. He also stated that the accused had previously been indicted for the unlawful possession of intoxicating liquor.

Appellant insists that a re-examination of the record will develop facts throwing a different light on the argument of which complaint is made. On the original hearing of this appeal, the assumption was indulged that the interpretation of the evidence reflected in the qualification to the bill was accurate and complete.

The witness Hogan gave in substance the following testimony: He was a patrolman for the police department. He had known the appellant about eighteen months, and in passing his house at night on various occasions, had seen "signs" of whisky, that is, a five-gallon jug in the yard and people going in and out of the place at night, some with packages in their hands. He reported these conditions to the witness Richardson, a police officer. Hogan had made raids at the appellant's taxicab stand, but had never found any whisky there. He said he had found whisky at a filling station, but no evidence that it belonged to the appellant. He had never arrested the appellant at any time, but supposed that other people had done so.

Richardson's testimony was in substance as follows: He had known the appellant for some sixteen years. On the 31st day of October, 1930, he found eighteen gallons of whisky in the appellant's house. It was in glass jugs which were in a closet in the house. The appellant was not at home at the time, but when word was left at his house by the officers, he came to the police station where his arrest was made. At the time of the search the appellant was not in the taxicab business and had not been so engaged for some weeks prior thereto.

Responding to an inquiry by state's counsel, the witness said of the

appellant: "He has been a bootlegger and a taxicab driver ever since I have been an officer. This is not the first time I ever made any arrest of him. I had him indicted twice before this, but did not quite put it on him. These cases were dismissed. I did not have sufficient proof to prove it."

Appellant admitted that in 1927 he acquired fifty gallons of whisky for his own use and not for sale; that the whisky found in his possession was what remained of the fifty gallons that he had originally possessed; that he had entered a plea of guilty in the Federal Court and satisfied the penalty in April, 1927; that since that time he had handled no whisky in a manner to violate the law, and had never sold any whisky since that time.

If there were found in the record any objection to the testimony of Officer Richardson last above quoted, namely, that the appellant had been a bootlegger and taxicab driver ever since the witness had been an officer, the question presented would be less difficult. We find in the record no authentic testimony equivalent to that given in the argument of the attorney, namely, that the *appellant used his taxicab to go to his home to get liquor and deliver it to purchasers all over Beaumont.* These remarks, taken as a whole, apparently assumed the attitude of testimony rather than argument. *This declaration contradicts the appellant's testimony and is not supported, so far as we can perceive, by the specific declaration of any witness testifying under oath.* Appellant was on trial and convicted of the unlawful possession of whisky. He defended on the statement that he possessed whisky for personal use and not for sale. To show that the whisky was for sale, the state relied on circumstances and the statute relating to prima facie evidence (article 671, P. C.). Since his conviction in the Federal Court some three years previous to the date of the present alleged offense, there was an absence of proof of sales of whisky by the accused. It was shown by the state's witness that all efforts to prove any sales of liquor by the accused had been abortive. This, notwithstanding frequent efforts to that end.

The declaration that the appellant was using his taxicab, as above stated, to deliver whisky to purchasers all over Beaumont, given to the jury by the prosecuting attorney and received with the sanction of the court (as implied from his refusal to exclude the argument), may have made a deep impression upon the jury and had a potent effect in giving the penalty assessed, which is four times the minimum. Under the circumstances, from the record in the case, we are constrained to the conclusion that we were in error in failing to reverse the judgment of conviction. A repetition of the many cases in which this court has condemned as improper remarks of counsel which assume the attitude of testimony rather than of comments upon testimony coming from witnesses is not deemed necessary. Mr. Branch, in his valuable work of annotating

the statutes of the state, cites many decisions of this court under the heading of "the unsworn statement of state's counsel to the jury of a material fact adverse to defendant which was not put in evidence during the trial will require the judgment of conviction to be set aside." See Hunnicutt v. State, 18 Texas App., 523, 51 Am. Rep., 330, and other cases collated in section 364, page 205, Branch's Ann. Tex. P. C. It is by no means to be inferred from the above statement or otherwise that every improper argument or an argument even of the type described above will work a reversal. See Anderson v. State, 106 Texas Crim. Rep., 305, 292 S. W., 218; Smith v. State, 92 Texas Crim. Rep., 446, 244 S. W., 522; Coates v. State, 98 Texas Crim. Rep., 314, 265 S. W., 891. Whether a reversal of the judgment is to be ordered upon an improper argument depends not upon the argument alone but upon the evidence and the result of the trial. Many cases will be found in which this court has refused to reverse the judgment even though the argument was improper but the evidence was sufficient and the verdict assessed was the minimum. We are unable to conclude, however, that the present case comes within the classification last above mentioned.

The motion for rehearing is granted, the order of affirmance is set aside, the judgment of the trial court is reversed and the cause remanded.

*Reversed and remanded.*