# JANUARY 3, 1940

### D. G. DUNCAN V. THE STATE.

No. 20466. Delivered October 11, 1939.
Rehearing Granted January 3, 1940.

The opinion states the case.

*Bennett & Bennett,* of Normangee, and *C. B. Sherman* and *J. W. Summers,* both of Rusk, *Wilson H. Fox,* of Taylor, and *Wilcox & Wood,* of Georgetown, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is burglary; the punishment assessed is confinement in the state penitentiary for a term of two years.

Upon his trial appellant entered a plea of guilty and asked for a suspension of sentence. A review of the evidence, which we deem unnecessary to set forth, has convinced us that the same is sufficient to sustain the jury's verdict.

In support of his plea for suspension of sentence, appellant proved that he was 26 years of age and had not theretofore been convicted of a felony in this or any other state; that his reputation as a law-abiding citizen was good in the community where he resided. The question of suspension was properly submitted in the charge of the court. However, the jury declined to heed his plea for a suspended sentence and assessed his punishment as above stated.

Appellant in due time filed a motion for a new trial in which he charged that the verdict of the jury was arrived at in a manner other than by a fair expression of the opinion of the jurors. He states that after the jury had deliberated for ap-

proximately forty hours, during which time several ballots had been taken, one of the jurors proposed to the other eleven that they vote by a ballot and be bound by the vote of the majority, whether the result of the ballot showed five years in the penitentiary with a suspension of sentence or two years in the penitentiary without a suspension. The testimony offered in support of his motion showed that the first ballot cast in pursuance to this agreement showed them to be evenly divided, six to six. The next ballot disclosed that seven were in favor of two years in the penitentiary without a suspension and that five were for five years with a recommendation for suspension. Ten of the jurors testified in support of the allegation that such a proposition was made and agreed to by all the jurors; they stated further, however, that after the second ballot a few minutes of discussion followed, and then the foreman of the jury requested that everyone who was in favor of assessing appellant's punishment at two years without a recommendation for suspension to hold up his hand. That every juror then held up his hand and the verdict was accordingly written, signed by the foreman and returned into court. This would seem to indicate that they did not obey the agreement inasmuch as they took another vote after the majority had voted for two years without a recommendation for suspension of sentence. If they had intended to be bound by the agreement there would have been no need in taking this last vote as they could have written the verdict according to the result of the second ballot. Moreover the court inquired of each of the jurors if this was his verdict, to which each of them nodded, indicating that it was.

Subdivision 3 of Art. 753 C. C. P. provides that a new trial shall be granted "Where the verdict has been decided by lot, or in any other manner than by a fair expression of opinion by the jurors."

We think the question here presented is controlled by the decision of this court in the case of Stockton v. State, 109 Tex. Crim. Rep., 554, 5 S. W. (2d) 996, wherein almost the identical question here under consideration was fully discussed, both on original hearing and on motion for rehearing. Consequently, we see no need of again discussing it here. For the reasons there assigned, appellant's contention is overruled.

All other matters complained of by appellant have been examined by us and are deemed to be without merit.

The judgment is affirmed.

The forgoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON MOTION FOR REHEARING.

BEAUCHAMP, Judge.

Appellant has filed a very able brief on several questions in support of his motion for rehearing. We consider it unnecessary to discuss but one proposition, namely, the conduct of the jury in arriving at the verdict. In his original opinion, Judge Krueger announced as authority for his conclusion the case of Stockton v. State, 5 S. W. (2d) 996. It appeared to all the court at that time that this case was in point and decisive. Upon further examination of the record, however, we have concluded that while the two cases are remarkably similar in all of their aspects, yet there is a difference which puts the present case within the inhibition of the statute. If all of the witnesses who testified on the motion for new trial in the Stockton case had agreed on the facts and by the facts of that case had shown that even some of the jurors had been led into a position where they felt obligated to vote for a conviction and penitentiary sentence contrary to their own judgment in the case, it would have presented a cause for reversal, but there was disagreement as to what occurred, and the trial court, acting within his proper discretion, determined that the jurors ultimately in their votes acted under their own judgments. This Court held that the trial court was authorized under the evidence to so find and upon that theory affirmed the case.

The present case is different. For several days the jury had been unable to agree. Different methods were proposed by which they might get together. One juror suggested that each one write the verdict which he desired on a slip of paper and that all of them be put in a hat and then they would draw a slip which would be the verdict. Other jurors demurred to this procedure because they understood that it would be contrary to law. It was then suggested that a secret ballot be taken and afterwards they would take an open ballot and that the majority in the secret ballot would be followed by each and every one in an open ballot. Prior to this there had been quite a fluctuation in the voting. The appellant had pleaded guilty and asked for a suspended sentence. Two jurors seem to have stood at all times for a five-year suspended sentence and, likewise, two others had voted each time for a two-year penitentiary term. Eight of the jurors changed their votes one way or another so that on

one occasion it was noted that ten jurors voted for a penitentiary term of two years while two on the same ballot voted for the five-year suspended sentence. Again, ten voted for a suspended sentence and two for the straight term. On different ballots the voting varied and no one knew what another ballot would bring. It was part of the agreement, as testified to by all jurors, that the final ballot should be by a show of hands openly and that this should go as the majority voted in the secret ballot. The final vote was the confirmation of the majority vote with the purpose and intention that this would make legal what would otherwise be an illegal verdict on a majority vote. It was taken pursuant to the agreement without any change in the opinion of any juror as to what should be the punishment. Some jurors testified on the motion for new trial that they made this agreement and stuck to it; that they never changed their minds but still believed that appellant should have had a suspended sentence; that the reason they held up their hands in the affirmative vote on the last ballot was because they had agreed to do so; that that appeared the only way they would all get together. There was no disagreement as to what occurred. Those who had favored a penitentiary term favored it still and so voted because it was their honest conviction, but those who favored a suspended sentence still favored it but voted for the term in the penitentiary because they had agreed to go with the majority. We view this as contrary to Sec. 3, of Art. 753, C. C. P. The statute is mandatory and directs that a new trial shall be granted: "Where the verdict has been decided by lot, or in any other manner than by a fair expression of opinion by the jurors."

In Leverett v. State, 3 Tex. Cr. App. 213, this Court said: "(A) verdict * * * should be the result of reason, deliberation, and honest conviction, and not the offspring of chance or accident."

This Court held in the Stockton case, supra that where the jury devises some means of arriving at a figure denominating the number of years of imprisonment and then following the method which arrives at such a period independently of any previous obligation agree to abide by it, the verdict will not be disturbed. See also Gaines v. State, 37 S. W. 331.

It has been held where a jury agrees to determine the number of years imprisonment by lot or by a "quotient" verdict and that they will abide by the result, the burden is then upon the State to show that such agreement was subsequently abandoned. Driver v. State, 38 S. W. 1020.

In White v. State, 40 S. W. 789, it was held that when the State has failed to discharge its burden to show that an abandonment of the agreement had taken place before final verdict that a new trial should have been granted.

We think that such an agreement was entered into in the instant case and that the State did not show, or attempt to show, that there was any abandonment of this agreement. On the motion for new trial several of the jurors testified that they cast their final vote because of their previous agreement to abide by the decision of the majority. Some said that they favored the suspended sentence and still favored it at the time they cast their final ballot and at the time of their examination on the motion for new trial, but that they felt honor bound to carry out their agreement and did so. In fact, the State's own witness, S. L. Davis, so testified.

It has been held in Harris v. State, 26 S. W. (2d) 225, and Grippon v. State, 44 S. W. (2d) 735, that where jurors use the "quotient" method of finding by lot the period of years to fix as the penalty without any previous agreement to abide by such a figure when found and they thereafter agree on such a period, there is no error. However, in Spicer v. State, 46 S. W. (2d) 685, where the jurors did agree to abide by the result of the lot, this Court held in the opinion by Presiding Judge Morrow that the verdict is bad even though the final verdict was slightly changed from the figure produced by the prior agreement.

From Branch's Ann. Tex. P. C., p. 535, Sec. 656, we quote the following with the authorities stated in support of it: "If the jurors agree beforehand to be bound by and do abide by the result of striking an average of their respective opinions as to the amount of the punishment, a new trial should be granted although a slight change was made in such result, such as dropping of a fraction. Hunter v. State, 8 Tex. Cr. App., 79; Wood v. State, 13 Tex. Cr. App., 138; Driver v. State, 37 Tex. Cr. Rep. 164, 38 S. W. 1020; White v. State, 37 Tex. Cr. Rep. 651, 40 S. W. 789; Good v. State, 67 S. W. 102; Sanders v. State, 45 Tex. Cr. R. 518, 78 S. W. 518; Brockman v. State, 50 Tex. Cr. R. 277, 96 S. W. 928."

While it has been held consistently that where no previous agreement was made or where the previous agreement was not respected after irregular balloting and the verdict finally reached was the expression of the fair will of each juror, there was no error even though irregular methods had been used. In each opinion there seems to be a definite presumption that

if there is a previous agreement to be bound by the method, there is error. Dawson v. State, 72 Tex. Cr. R. 68; Bledsoe v. State, 12 S. W. (2d) 227; Pruitt v. State, 30 Tex. Cr. App. 156; 42 Tex. Jur. p. 442, Sec. 349.

A decision in this case must turn upon a determination of whether or not there was a previous agreement entered into by the jurors that all would abide the majority vote in the secret ballot and whether or not that finally resulted in the verdict fixing the penalty of two years in the penitentiary. Under the facts of the case as we now see them, and from the testimony of all of the jurors who were called as witnesses on the motion for new trial, no verdict would have been reached except upon that agreement. It was not a fair expression of the judgment of all the jurors at the time the vote was taken and, therefore, a new trial should have been granted.

The motion for rehearing is granted, and the cause is reversed and remanded for a new trial.

CONCURRING OPINION.

HAWKINS, Presiding Judge (concurring).

Further examination of the testimony of the jurors heard upon consideration of the motion for new trial shows without contradiction that the verdict was arrived at in the following manner. After many ballots the jury had been unable to agree upon the punishment, some holding out for two years without a suspended sentence, others insisting on five years with suspended sentence. They finally agreed to take a secret ballot to ascertain how the majority stood on the question, it being further agreed in advance that all would abide by the majority vote, and signify their agreement thereto by holding up their hands. The secret ballot showed seven for two years straight and five for five years with suspended sentence; then in accord with the previous agreement each juror held up his hand to signify his agreement to the two years in the penitentiary without suspension of sentence.

If the majority vote had been taken for the purpose of reaching some basis for further discussion by the jury we would have a different question. The vice is the agreement in advance to be bound by the majority vote, and the standing by such agreement. To sustain a verdict thus arrived at would be against the great weight of authority as shown in the notes annotated under the reported case of Casstevens v. Tex. Pac. Ry. Co., as reported in 73 A. L. R. 89, notes being on page 93.

The case mentioned is from the Supreme Court of our own State, reported also in 119 Texas 456, 32 S. W. (2d) 637, in which a verdict so arrived at was condemned as not reflecting "a fair expression of opinion by the jurors." The opinion in the case mentioned was followed in Scholz v. Handy Andy Community Stores, Inc., 70 S. W. (2d) 309. Even in states having no statute such as our own—Art. 753, Subdivision 8, C. C. P.—permitting jurors to testify as to such improper conduct, verdicts arrived at in the manner indicated are severely condemned. State v. Guillory, 163 La. 98, 111 So. Rep. 612.

A diligent investigation has failed to reveal any decision from our own Court sustaining such a verdict as here dealt with except Grippon v. State, 119 Tex. Cr. R. 243, 44 S. W. (2d) 735, and perhaps Stockton v. State, 109 Tex. Cr. R. 554, 5 S. W. (2d) 996—if the latter case may be susceptible of such construction. The Grippon case was apparently based upon the opinion on rehearing in Stockton's case. The Grippon case is expressly hereby overruled on the point under consideration and any intention by the Stockton case to uphold a verdict reached as in the present instance is disclaimed, and if subject to such construction it is also overruled on the point here involved.

We make the observations regarding the two cases last above mentioned in order that conflicting opinions may be eliminated.

With the foregoing statements as reasons therefor this is filed as concurring in the opinion on rehearing setting aside the judgment of affirmance and reversing the judgment of conviction and remanding the case for a new trial.