WILLIE STALLWORTH V. THE STATE.

No. 23056. Delivered February 14, 1945.
Rehearing Denied March 28, 1945.

256

The opinion states the case.

*Martin & Martin* and *W. B. Chauncey,* all of Wichita Falls, for appellant.

*Geo. W. Anderson,* District Attorney, of Wichita Falls, and
*Ernest S. Goens,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is murder. The punishment assessed is confinement in the state penitentiary for a term of ten years.

The record before us reflects that on the night in question quite a few negroes had congregated at Jeanetti Stevenson's cafe and also at Curley's cafe, both located on the corner of Lake and Barwise Streets, and being opposite each other. Sometime about midnight Rufus Fields called the Uneeda Cab Company to send a cab. In a short time a cab appeared and he went to it and entered on the right-hand side and took a seat next to the driver. About the same time Milton Johnson, accompanied by Dorothy Ezell Martin and Nola Anderson, entered the cab and occupied the rear seat. Appellant, who had also called for a Uneeda Cab, thought it was the one he had ordered and wanted to get in, but the driver told him that he had a load; that if he would wait until he could return he would then take him home. At this juncture, the evidence of the State and the defendant begins to differ. The State's witnesses testified that appellant said he had ordered it and that the "damn cab" was not going to leave without him. Then Johnson piped in and told him to quit cussing, that there were women in the cab, whereupon appellant stuck his head through the window and used some more bad language; and it was then that Johnson told him that he had better get his head out of the cab while he was able to do so; that appellant then drew a pistol and shot the cab driver over the right eye. According to his testimony, Johnson then drew his pistol and fired several shots at appellant in order to protect the cab driver. Fields, who was on the front seat beside the cab driver, said that appellant was on the righthand side of the car toward the rear, while the negroes in the rear seat said that he stood on the left-hand side of the car next to where the driver was seated.

Appellant testified that when he noticed the cab drive up he thought it was the one he had ordered; that when he got to it, he was informed that it was full and that he would either have to wait or get another taxi; that the negroes in the rear seat became impatient at the delay and Johnson began to curse him and started to get his gun; that one of the girls said to him: "Here is my gun," whereupon Johnson said: "I have one." Appellant then ducked below the back door on the right side of the car. Johnson fired immediately, whereupon he (appellant)

shot at Johnson, and then another shot or two were fired by each one. The negroes then began to scatter.

The record definitely discloses that two shots were fired through the small window at the rear of the car on the right-hand side. These shots were fired from the inside of the car. Some witnesses who were on the outside of the cafe at the time, all testified that appellant was to the rear end on the right-hand side of the car when the first shot was fired. Appellant further testified that he did not intend to shoot the taxi driver; that he was shooting at Johnson in self-defense. There were no other bullet marks found on the taxi except the two heretofore mentioned.

The foregoing is in substance the material facts proven on the trial.

The court instructed the jury relative to the law of murder with and without malice, and self-defense against actual or apparent danger. Appellant, in due time, objected to the court's charge wherein the court instructed the jury relative to the law of murder with malice. His contention in the court below, and now, is that the evidence did not raise the issue of murder with malice aforethought. If the State's evidence is true, and the jury no doubt accepted it as such, then the issue was raised and the instruction was authorized.

Appellant also objected to the court's charge because of the failure to instruct the jury on excusable homicide and in declining to give his special requested charge to the effect that if they believed from the evidence that the bullet from the defendant's gun accidentally struck the deceased and killed him while he was acting in his necessary self-defense from an attack by Milton Johnson and Dorothy Ezell Martin, or either of them, the defendant would not be guilty of murder and if they so believed, or had a reasonable doubt thereof, to acquit him.

The court, in his main charge, instructed the jury as follows:

"Now, if you believe that the defendant, Willie Stallworth, committed the offense herein charged as a means of defense, believing at the time he did so, (if he did do so) that he was in danger of losing his life or suffering serious bodily injury at the hands of the said Milton Johnson, (or) Dorothy Ezell Martin, or either of them, and while so defending himself and while so shooting at Milton Johnson or Dorothy Ezell Martin, if you

find he did so shoot, accidentally killed Charles Raymond Sheppard, without the intent to kill the said Charles Raymond Sheppard, you will find the defendant not guilty and so say by your verdict, or if you have a reasonable doubt in your mind as to whether said Willie Stallworth, the defendant herein, was in danger of receiving at the hands of Milton Johnson (or) Dorothy Ezell Martin, or either of them, such serious bodily injury, or as to whether he at such time, thought he was in such danger, then you will find the defendant not guilty and so say by your verdict."

It is our opinion that the foregoing charge in substance instructed the jury that if they believed from the evidence that appellant shot at Milton Johnson and Dorothy Ezell Martin, or either of them, for the purpose of protecting himself from actual or apparent danger at their hands, or either of them, and in doing so he accidentally killed the deceased, Charles Raymond Sheppard, or if they had a reasonable doubt thereof, to acquit him. This was all that he was entitled to under the evidence in the case.

Appellant next complains of the court's action in overruling his motion for a new trial based on alleged misconduct of the jury. It appears from the record that after the jury had retired and selected a foreman, they voted on the question of the defendant's guilt. All of them voted to find him guilty of murder with malice. Thereupon, they proceeded to vote on the penalty to be assessed against him. Two of the jurors voted for three years, two for five years and eight for twenty-five years. After several ballots had been taken without any change, one of the jurors remarked to one of their members, who steadfastly stood for a three-year penalty, that his brother had been convicted for violating the White Slave Traffic Act by taking a lewd woman from Oklahoma to the State of Arkansas and having an act of sexual intercourse with her; that for said offense he was given a penalty of five years; that the offense for which the defendant was on trial was far more serious than the one mentioned. Another juror stated that a few months prior thereto a negro had killed a bus driver in the town of Wichita Falls and was given ten years and that this defendant ought to have the same penalty. The statements by the jurors as aforesaid were not controverted by any evidence, nor had any evidence been introduced in the trial of the case relative to the matters stated. Juror Smith testified that he knew nothing of the cases mentioned prior thereto, but when the juror made the comparison, he then agreed to the ten-year penalty. It occurs to us that this

was introducing new evidence by some of the jurors in an endeavor to cause Juror Smith to recede from his position and to get him to agree to a higher penalty. That it had this effect is conclusively shown by the testimony of Juror Smith.

Article 753, C. C. P., sets out the grounds for the granting of new trials in felony cases. Section 7 of said article reads in part as follows:

"Where the jury, after having retired to deliberate upon a case, have received other testimony; or where a juror has conversed with any person in regard to the case," etc.

We are of the opinion that the jurors received other evidence which was used to the prejudice of the appellant. It is our opinion that under the facts disclosed by this record, the learned trial court erred in declining to grant a new trial. In support of the opinion here expressed, we refer to the following authorities: Brown v. State, 134 Tex. Cr. R. 275; Bryan v. State, 8 S. W. (2d) 136; Moore v. State, 47 S. W. (2d) 619; Pafford v. State, 138 Tex. Cr. R. 299; Johnson v. State, 114 Tex. Cr. R. 619; Zahm v. State, 115 Tex. Cr. R. 182; Moore v. State, 120 Tex. Cr. R. 215.

The State contends that there were eight jurors who receded from their original conviction that appellant's punishment should be twenty-five years. While that may be true, still there is no evidence adduced that other evidence than that introduced on the trial was resorted to in influencing them to recede from their original position. Hence the presumption obtains that after considering all the evidence submitted to them under the ruling of the court, they changed their opinion. The State, in its brief, has cited us to a number of cases which it contends support the trial court's conclusion that the evidence which the jurors received in their retirement was not of such prejudicial nature as to require a reversal of this case. We note that in each of the cases cited by the State the effect of the evidence which the jurors received in their retirement in those cases ameliorated the punishment rather than enhanced it. Consequently, he could not complain, but in the instant case, it was used to enhance the punishment to his prejudice.

From what we have said it follows that the judgment of the trial court should be reversed and the cause remanded, and it is so ordered.

The foregoing opinion of the Commission of Appeals has

been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

## ON STATE'S MOTION FOR REHEARING.

BEAUCHAMP, Judge.

The State has filed a very forceful motion for rehearing in which the principal challenge is directed at the following expression found in the original opinion: "We are of the opinion that the jurors received other evidence which was used to the prejudice of the appellant." It is then contended that the statements referred to in the original opinion as "other evidence" are not such because they bear no relation to the guilt or innocence of the party on trial and in no way modify any evidence introduced in the trial of the case either by the State or the defense. As observed by the motion, the misconduct consisted of a statement calling attention to a penalty of ten years which was assessed against another negro who stabbed a bus driver and was tried at the military post some time prior thereto. Also, the jurors were advised of a conviction and sentence imposed on a brother of one of the jurors by a court for a different character of crime. We believe that the State has not taken quite the correct viewpoint and that it has placed a more restricted definition of "other evidence" than is customary. We recall that it is error for a jury to discuss a former conviction of the defendant when that conviction is not properly before them as evidence in the case. Also, that it is error for the conviction of a codefendant to be put before the jury during their retirement by one of the jurors, especially when such illegal testimony "is calculated to affect the penalty assessed against defendant." Branch's Ann. Penal Code, Sections 570-1, and authorities there discussed. Such evidence does not relate to the guilt or innocence of the accused but the test seems to be whether or not such illegal testimony is calculated to affect the penalty assessed against the party on trial. We believe this to be the rule proper to consider in the case now before us. The authorities cited by the State in its motion will not modify this rule. Hendricks v. State, 13 S. W. 672.

It is further presented that the careful trial judge heard the facts on the motion for new trial and that his finding thereon was binding on this court. We have carefully reconsidered the record and it is our conclusion that his finding was one of law and not of fact, consequently the rule invoked would not apply.

In its motion the State has further said that the case is very

much like Stockton v. State, 5 S. W. (2d) 996, and argument presented apparently is based on a misconception of what that case did hold. It seems to be the view that any error made prior to the final ballot would be cured by it. Such misconception apparently is justified because this court, in the case of Grippon v. State, 44 S. W. (2d) 735, fell into a similar error. However, Presiding Judge Hawkins in a concurring opinion in the case of Duncan v. State, 135 S. W. (2d) 111, said: "The Grippon case was apparently based upon the opinion on rehearing in Stockton's case. The Grippon case is expressly hereby overruled on the point under consideration and any intention by the Stockton case to uphold a verdict reached as in the present instance is disclaimed, and if subject to such construction it is also overruled on the point here involved."

The final ballot taken in the instant case might apparently be the free and uninfluenced choice of all twelve jurors but a proper understanding of the testimony given on the motion for new trial will not sustain that view. We think that the Stockton case does not aid the verdict in the instant case.

The State next complains that we have permitted a juror to impeach his own verdict contrary to the rule. Mr. Branch has said, in Section 575: "It is only in extreme cases where the ends of justice and common fairness demand it that an exception to this rule is authorized." In the same Section he says: "It is competent to prove the misconduct of the jury by a voluntary affidavit of a juror, and a verdict may, in like manner, be sustained by such affidavit." He then proceeds to give illustrations of what are extreme cases, citing numerous decisions of this court. The study is very enlightening and unquestionably sustains the court in giving consideration to the testimony of the jurors in the instant case.

Again it is presented that a great many jurors wanted more penalty than ten years and that a compromise was reached, by reason of the new evidence, whereby the penalty which was assessed was much less than the average time which the various jurors desired to give him. Surely the District Attorney does not mean to present this as a cure for the error pointed out. A conviction must be had by reason of the voluntary vote of all twelve jurors.

The very able motion in this case has challenged the most careful consideration of the court but we remain of the opinion that the conclusion reached originally should be sustained.

The State's motion for rehearing is overruled.