**Ronald G. HARTMAN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 48255.**

Court of Criminal Appeals of Texas.

March 27, 1974.

Rehearing Denied April 17, 1974.

Charles M. Beacham and Arthur Estefan, San Antonio, for appellant.

Ted Butler, Dist. Atty., Gordon V. Armstrong, C. Nick Rothe, David K. Chapman, Asst. Dist. Attys., San Antonio, Jim D. Vollers, State's Atty., and Buddy Stevens, Asst. State's Atty., Austin, for the State.

## OPINION

QUENTIN KEITH, Commissioner.

Appellant was convicted of murder with malice and the jury fixed his punishment at confinement for life.

Appellant does not challenge the sufficiency of the evidence, thus eliminating the necessity of setting out the facts of the case. Appellant's single ground of error alleges that the jury received unsworn testimony from members of the jury during their deliberations upon the punishment to be assessed. His verified motion for new trial was supported by a detailed affidavit of one of the jurors.

Juror Curtin testified that when the first ballot was taken the jury stood eleven to one for a term of life with her as the sole dissenter voting for twenty-five years. After considerable argument by other jurors attempting to get her to change to the life term, Mrs. Curtin said that she received information which caused her to change her mind and vote with the majority for a life term. She testified:

> "One of the facts I received that I did not receive in the courtroom was that Mr. Hartman was serving a life sentence for rape. Another one—another one of the jurors said that during the previous day when the jury was asked to leave the room one of the witnesses in identifying Mr. Hartman—she pointed him out and he was supposed to have said to her, 'I have killed before and I will kill again.' Those were the two main things."

Mrs. Curtin also testified that most of the jurors knew that appellant had been convicted of rape and sentenced to life imprisonment, but that she did not know of such fact until she was so told by the foreman.[1] Her testimony as to the appellant having said that he had killed once and would kill again has reference to an episode which occurred while the jury was out of the courtroom.

In the presence of the jury, State's counsel called as a witness one Brenda Fossum, at which time the jury was removed from the courtroom upon motion of appellant. The witness tendered was the prosecutrix in the prior rape case who testified, outside the presence of the jury, that on September 3, 1970, appellant said to her: "That he had killed before and that he would kill again." Appellant's objection to the question and answer was sustained, the witness was excused and did not testify.

---

1. The jury was deliberating the punishment in the present case on March 1, 1973. Appellant's conviction for rape was affirmed by this court on July 11, 1973. Hartman v. State, 496 S.W.2d 582 (Tex.Cr.App.1973).

No witness testified in the presence of the jury that appellant had ever said "I have killed before and I will kill again" as Mrs. Curtin testified that she was told by Juror Lehberger. If Mrs. Curtin is to be believed, Mrs. Lehberger conveyed to the jury precisely the information which the trial court had held to be inadmissible.

Juror Curtin said that it was the foreman who told of appellant's serving the life sentence for rape and that it was Juror Lehberger who made the statement about the prior killing. Our record does not disclose positively that Foreman Andersen was in court at the time of the hearing but does reveal that Juror Lehberger was there. Neither was called as a witness. Having tendered Mrs. Curtin, appellant rested and the State called only Juror Muennink.

Muennink's testimony came in answer to leading questions; and, we note in passing, he did not attempt to refute the testimony given by Mrs. Curtin about appellant's alleged statement that he had killed once and would kill again. We reproduce *all* of the pertinent testimony of Mr. Muennink given on direct examination:

"Q. * * * Now, in regard to—we had some questions, I believe, that was [sic] asked by Mr. Butler, the District Attorney, to [sic] the wife of this man here. I believe, if you recall, she took the witness stand and in regard to his reputation I believe she stated he had a good reputation. Do you recall that?

"A. Yes, sir; I recall her on the stand. Yes, sir.

"Q. And, I think Mr. Butler, at that time, said, 'Have you heard that the Defendant was arrested in West Virginia for several burglaries?' And she said she was, do you recall that?

"A. Yes, sir.

"Q. And have you heard that he was arrested for raping a woman by knife-point or something like that and she said I have heard of that, too. Do you recall that?

"A. No, sir; I really don't.

"Q. Okay. Now, in regard to the deliberations in this case, was there anything considered in regard to this man serving a life sentence, before the jury found him—before the jury assessed his life sentence, that you recall?

"A. *To the best of my knowledge* it was brought up afterwards.

"Q. Afterwards?

"A. Yes, sir.

"Q. So, the jury had already deliberated and set his punishment at life and there was some discussion at that point?

"A. Right. From the time—*the best that I remember*—from the time that we had signed a paper there was about ten minutes before they brought us out here for some reason or another, which I don't know. It was discussed then, *to the best of my knowledge*. We discussed it then. *That is the best of my knowledge.*" (emphasis supplied)

Appellant's counsel elicited from Muennink the fact that the first ballot was taken "[s]hortly before we went to supper," but that he did not remember when they actually went for supper.[2] It was after supper, according to Muennink, that the discussion was resumed with Juror Curtin in an effort to get her to agree with the life sentence; or, as he said: "Well, we—we re-discussed the case, to the best of my knowledge."

2. A photocopy of the verdict fixing penalty found in our record discloses that it was filed with the clerk at 4:14 p. m.

Asked specifically if it was brought to Juror Curtin's attention by the foreman that appellant had been convicted of rape and was serving a life sentence, the juror answered: "Not that I recall, sir."

Asked if Juror Lehberger gave "some information to the jurors or to any member of the jury concerning what a witness testified to when the jury had been removed," Muennink answered: "I don't recall it, sir." At this point, the hearing of evidence on the motion was concluded.

The trial judge, at the conclusion of the hearing, announced his ruling in this language: " * * * I think he makes—the second witness [Muennink] makes it a fact issue and I am going to resolve against the defendant and overrule the motion for new trial."

Having examined the record carefully, we are impelled to the conclusion that the trial court fell into error in failing to grant the motion for new trial.

■ It is now clear that an accused has a federally protected constitutional right to be confronted with witnesses against him when accused of crime. Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965).[3]

This Court, many years before the pronouncements in *Pointer* and *Douglas* were handed down, held that the receipt of unsworn testimony by a jury while deliberating "is contrary to the constitutional provisions according the defendant the right to be confronted by the witnesses against him." Pafford v. State, 138 Tex.Cr.R. 299, 135 S.W.2d 990, 991 (1940).

Statutory recognition of this principle is found in Art. 40.03, Sec. 7, Vernon's Ann. C.C.P., directing the trial court to grant a new trial, if it is of the opinion that the accused has not received a fair and impartial trial, "[w]here the jury, after having retired to deliberate upon a case, has received other testimony."

It is apparent from the ruling of the trial judge, set out above, that he was of the opinion that the State had raised a fact issue on the existence, vel non, of jury misconduct. One of the leading cases enunciating this rule is Walton v. State, 398 S.W.2d 555, 556 (Tex.Cr.App.1966), wherein it is written:

"It has been the consistent ruling of this Court that where an issue of fact is drawn as to what occurred in the jury room, the proper tribunal to decide that issue is the trial judge, who hears the witnesses. It is apparent from his ruling that the trial court accepted the testimony of juror Landrum, and we find no abuse of discretion." (citations omitted)

*Accord:* Brown v. State, 475 S.W.2d 938, 958 (Tex.Cr.App.1971); Daniel v. State, 486 S.W.2d 944, 946 (Tex.Cr.App.1972); Williams v. State, 481 S.W.2d 119 (Tex.Cr.App.1972); Simpson v. State, 169 Tex.Cr.R. 242, 332 S.W.2d 732, 734 (1960); Boatwright v. State, 169 Tex.Cr.R. 280, 343 S.W.2d 707, 709 (1960).

■ Another rule of equal validity to that just stated is to be found in Davis v. State, 168 Tex.Cr.R. 399, 328 S.W.2d 315, 316 (1959):

"It is the settled law of this State that, where the testimony as to what occurred in the jury room is not controverted and shows that the jury during deliberation received other and new evidence, then there is no issue of fact for the trial court's determination and a new trial should be granted. Citizen v. State, 159 Tex.Cr.R. 519, 265 S.W.2d 109, and Rogers v. State, 158 Tex.Cr.R. 8, 252 S.W.2d 465."

See also, Kingston v. State, 390 S.W.2d 752, 753 (Tex.Cr.App.1965).

3. Both of these cases were cited in the motion for new trial which was overruled by the trial court.

In our detailed analysis of Juror Muennink's testimony, we noted that State's counsel did not attempt to refute the testimony of Juror Curtin about appellant's statement of having killed before, etc. Even when defense counsel alluded to this incident on cross-examination, Muennink did not deny that the statement was made, his answer being, "I don't recall it." This is a far cry from a denial that the incident happened. See and compare Baltazar v. State, 373 S.W.2d 753 (Tex.Cr.App. 1963).

As Judge Woodley, speaking for the Court, said in Spriggs v. State, 160 Tex. Cr.R. 188, 268 S.W.2d 191, 192 (1954):

"We cannot agree that the testimony of seven of the jurors to the effect that they did not hear or make the statement was sufficient to authorize the trial judge to conclude that the remark was not made."

See also, Gibbs v. State, 163 Tex.Cr.R. 370, 291 S.W.2d 320 (1956).

Under the undisputed record which we review, it is clear that the trial court erred in overruling appellant's motion for new trial. See McDaniel v. State, 165 Tex.Cr. R. 402, 308 S.W.2d 24, 26 (1957), wherein the Court said:

"Since no juror denied that the statement was made, the testimony that it was made was not controverted, and no fact issue was raised for the trial court's determination.

"Under such state of the record the trial court should have granted the appellant's motion for new trial. See Rogers v. State, 158 Tex.Cr.R. 8, 252 S.W. 2d 465 and McCoy v. State, 161 Tex.Cr. R. 179, 275 S.W.2d 676."

In a similar case, Stallworth v. State, 148 Tex.Cr.R. 255, 186 S.W.2d 252, 255 (1945), the Court said:

"The statements by the jurors as aforesaid were not controverted by any evidence, nor had any evidence been introduced in the trial of the case relative to the matters stated. Juror Smith testified that he knew nothing of the cases mentioned prior thereto, but when the juror made the comparison, he then agreed to the ten-year penalty. It occurs to us that this was introducing new evidence by some of the jurors in an endeavor to cause Juror Smith to recede from his position and to get him to agree to a higher penalty. That it had this effect is *conclusively* shown by the testimony of Juror Smith." (emphasis supplied)

After citing many cases, the judgment of conviction in Stallworth was reversed. So it is here.

For the error pointed out, the judgment of the trial court is reversed and the cause is remanded.

Opinion approved by the Court.