# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

**NO. 03-06-00563-CR**

---

**Ex parte Fred Michael Underwood**

---

**FROM THE COUNTY COURT AT LAW NO. 5 OF TRAVIS COUNTY
NO. 670854, HONORABLE NANCY WRIGHT HOHENGARTEN, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Fred Michael Underwood's trial for operating a watercraft while intoxicated ended in a mistrial after the jury reported that it was unable to reach a verdict. Underwood subsequently applied for a writ of habeas corpus seeking to prevent a retrial on the ground that further prosecution would constitute double jeopardy. *See* U.S. Const. amend. V; Tex. Const. art. I, § 14. The county court at law denied relief and this appeal followed. We conclude that there was manifest necessity for the mistrial, and therefore we affirm the order.

At 7:00 p.m. on May 29, 2004, Austin Park Police officers stopped a boat being operated on the wrong side of Lake Austin. The boat was occupied by eight persons including Underwood, who was identified by both officers as the operator. There were many empty beer cans in the boat and one of the passengers appeared close to passing out. Underwood's eyes were glassy and bloodshot, his speech was slurred, and he had about him the odor of alcoholic beverage. After Underwood failed several field sobriety tests, he was arrested. Underwood later submitted to an intoxilyzer test; the two samples showed alcohol concentrations of 0.218 and 0.205.

Underwood testified and acknowledged being the owner of the boat. He also admitted being intoxicated. He denied, however, that he was operating the boat when it was stopped by the officers. Underwood testified that his friend Todd Whiteford was operating the boat, a fact that Whiteford confirmed in his own testimony. According to Underwood and Whiteford, Whiteford stopped the boat and turned off the engine in response to the officers' signal to stop. Underwood then told Whiteford to move to the passenger seat so that Underwood could gather the documents that he knew the officers would want to inspect. According to both witnesses, the officers never asked who was operating the boat.

The jury began deliberating at about 1:30 p.m. At a time that is not reflected in the record, the jury was returned to the courtroom, and the court read what it referred to as an *Allen* charge.[1] *See Allen v. United States*, 164 U.S. 492 (1896). At 5:05 p.m., the court received a note from the presiding juror saying, "We are unable to reach a unanimous decision, and foresee no resolution." The jury was again returned to the courtroom, and after the presiding juror indicated that the jury was split five-to-one, the court told the jurors that dinner would be provided and asked them to resume deliberating. Finally, at 7:50 p.m., the court received an unsigned note: "The vote is <u>still</u> five to one. I am the one and I see <u>no</u> hope of obtaining a unanimous verdict." The court told counsel, "I don't think this person's changing their mind. I think that the—they're not wanting to do violence to their conscience as the Allen charge says. I don't think it's going to change." Both the prosecutor and defense counsel objected to a mistrial and urged the court to give a second *Allen* charge. The court was unpersuaded: "Well, I'm going to go ahead and declare a mistrial sua sponte

---

[1] The text of the charge is not in the record.

2

because I don't think that they're going to change their minds." The jury was returned to the courtroom for a third time, and the presiding juror confirmed that the jurors were unlikely to agree. The court declared the mistrial six and one-half hours after deliberations had begun.

The constitutional double jeopardy protection embraces the defendant's right to have his trial completed by a particular tribunal. *Arizona v. Washington*, 434 U.S. 497, 503 (1978). When a mistrial is declared over the defendant's objection after the jury is sworn, a retrial is barred by double jeopardy unless there was manifest necessity for the mistrial. *Id*. at 505. One necessity for a mistrial that has long been recognized is the trial judge's belief that the jury is genuinely deadlocked and unable to reach a verdict. *Id*. at 509. This principle is embodied in article 36.31, which grants trial courts the discretion to discharge a jury when "it has been kept together for such time as to render it altogether improbable that it can agree." Tex. Code Crim. Proc. Ann. art. 36.31 (West 2006).

The trial judge is afforded broad discretion in deciding whether the discharge of a deadlocked jury is manifestly necessary. *Washington*, 434 U.S. at 509. If a retrial of the defendant were barred whenever an appellate court viewed the necessity for a mistrial differently from the trial judge, there would be a danger that the latter, considering the serious consequences of an erroneous ruling, would employ coercive means to break the jury's apparent deadlock and thereby frustrate the public interest in just judgment. *Id*. at 509-10. Therefore, the trial judge's decision to declare a mistrial when she considers the jury deadlocked is accorded great deference by a reviewing court. *Id*. at 510.

3

The exercise of discretion in declaring a mistrial when the jury cannot agree is determined by the amount of time the jury deliberates considered in light of the nature of the case and the evidence. *Beeman v. State*, 533 S.W.2d 799, 800 (Tex. Crim. App. 1976); *Montemayor v. State*, 55 S.W.3d 78, 87 (Tex. App.—Austin 2001, pet. ref'd). The "nature of the case and the evidence" means the type and complexity of the evidence, whether expert testimony is involved, the number of witnesses and exhibits, the complexity of the charge, whether the jury moved toward agreement during deliberations, and the nature and extent of the jury's communication with the court. *Torres v. State*, 961 S.W.2d 391, 393 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd).

Underwood argues that the testimony in this case was "relatively complex" and that the "jury was presented with numerous issues, including evidence of intoxication; the reliability of expert testimony concerning field sobriety tests; the reliability of expert testimony concerning intoxilyzer evidence; and credibility disputes between witnesses for the State and the defense." Notably, most of the complex testimony cited by Underwood concerns his intoxication, an issue that became moot when he admitted being intoxicated.[2] In fact, as presented to the jury, the case was straightforward: was Underwood operating the boat as the arresting officers testified, or was Whiteford operating the boat as Underwood and Whiteford testified. Resolving this issue did not require the jury to analyze the expert testimony regarding the intoxication tests, but merely to do the one thing that all juries do: decide the relative credibility of the witnesses.

---

[2] Defense counsel told the jury in his closing argument that Underwood's intoxication was "not the issue here today."

4

Underwood urges that the court should have required the jury to deliberate at least as long as it took present the evidence. The State called a total of five witnesses: the two patrol officers, a third officer who transported Underwood to the jail, the intoxilyzer operator, and the technical supervisor charged with maintaining the intoxilyzer machine. Underwood and Whiteford were the only defense witnesses. The parties agree that the presentation of evidence took about twelve hours, spread over two days. But roughly half of this time was spent questioning and cross-examining the State's witnesses regarding Underwood's intoxication, the administration of the intoxication tests, and the reliability of the intoxilyzer machine, all matters that became moot when Underwood admitted being intoxicated. Thus, the time spent adducing evidence regarding the identity of the boat's operator and other matters approximately equaled the time the jury spent deliberating.

Keeping in mind the great deference that must be afforded the trial court's determination that a jury is deadlocked, the time spent deliberating the one issue of witness credibility that the jury was asked to decide, and the notes indicating that the jury remained deadlocked even after receiving an *Allen* charge, we hold that the trial court did not abuse its discretion by discharging the jury and declaring a mistrial at Underwood's first trial. Because there was a manifest necessity for the mistrial, a retrial will not constitute double jeopardy.

The order denying habeas corpus relief is affirmed.


_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Puryear and Henson

Affirmed

Filed:   May 8, 2008

Do Not Publish