**Rebekah Zacarias TORRES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–96–00333–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 14, 1997.

Discretionary Review Refused Nov. 26, 1997.

Randy Schaffer, Houston, for Appellant.

John B. Holmes, William Delmore, III, Houston, for Appellee.

Before TAFT, MIRABAL and WILSON, JJ.

## OPINION

TAFT, Justice.

Appellant, Rebekah Zacarias Torres, was charged with driving while intoxicated (DWI). She pled not guilty and the case proceeded to trial. After the case was presented to a jury, the trial court declared a mistrial because the jury had not reached a verdict after deliberating for five and three-quarters hours. Appellant filed an application for writ of habeas corpus arguing that a retrial would violate her right not to be placed twice in jeopardy for the same offense because the trial court had prematurely declared a mistrial. The trial court issued the writ but denied relief. We address whether the declaration of a mistrial was an abuse of discretion and whether the double jeopardy clause of the Texas Constitution provides greater relief. We affirm.

## Background

At trial, the arresting officer testified that he stopped appellant's vehicle because she was speeding and weaving into the adjoining lane of traffic. He testified that appellant appeared intoxicated and that he arrested her after she had difficulty performing field sobriety tests and failed the horizontal gaze nystagmus test. An intoxilyzer operator testified that appellant refused to take an intoxilyzer test. A videotape of appellant performing sobriety tests was admitted into evidence. The person who led appellant through the videotaping testified that appellant made mistakes performing the tests. All three witnesses testified that they believed appellant was intoxicated.

Appellant testified that she drank one glass of wine and two beers on the night in question. She testified that she did not commit any traffic violations and that she was not intoxicated. Appellant called four witnesses that were with her prior to her arrest. They testified that appellant had a glass of wine at a friend's apartment and two beers at a nightclub. In their opinions, appellant was not intoxicated. Defense counsel estimated it took five and one-half hours to present the evidence in this case.

The jury was instructed to determine whether the arresting officer had reasonable suspicion to stop appellant and whether the State had proven beyond a reasonable doubt that appellant was intoxicated at the time she was driving. The following is the sequence of jury deliberations:

### December 13

Jury deliberations began at 2:42 p.m.

Jury asked to see videotape of appellant at 3:19.

Jury resumed deliberations at 3:34 p.m. after watching videotape.

Jury asked to see police offense reports and field notes and asked what would happen if it did not reach a verdict "this evening;" trial court responded that the items were not in evidence and asked the jury the numerical division of disagreement. The jury responded they were "pretty much split."

The trial court recessed at 5:12 p.m.

### December 14

Jury deliberations resumed at 9:00 a.m.

Jury asked to hear testimony about "clues" for determining intoxication and asked for clarification of the terms "intoxication" and "reasonable doubt." Trial court responded that it could not elaborate.

At 10:00 a.m. the jury told the trial court it was "split in our decision regarding the defendant's innocence" and was "a hung jury, with no chance of reconciliation." Trial court instructed the jury to continue to deliberate.

At 12:25 p.m. the jury told the trial court, "We are not able to agree and see no end in sight. We are also hungry. May we break for lunch?" The trial court determined that the jury was deadlocked at 3 to 3, asked if further deliberations would produce a verdict. Each of the jurors said no.

■ Defense counsel estimated jury deliberations totaled five and three-quarters hours. The trial court did not give an *Allen* charge.[1] Over appellant's objection, the trial court declared a mistrial and discharged the jury. Appellant later filed a pretrial application for writ of habeas corpus seeking to bar a retrial. The trial court issued the writ and, after a hearing, denied relief.

### Declaring Mistrial—Deadlocked Jury

In her sole point of error, appellant asserts retrial is barred on double jeopardy grounds because the trial court abused its discretion in declaring a mistrial over appellant's objection due to a deadlocked jury. Appellant argues the trial court failed to implement alternatives less drastic than a mistrial. Appellant specifically urges the double jeopardy clause of the Texas Constitution should be construed to bar a retrial when the trial court declares a mistrial over the defendant's objection and without having given an *Allen* charge.

Appellant's brief accurately sets out the standard of review:

> Texas statutory law provides that the court may, in its discretion, discharge the jury "where it has been kept together for such time as to render it altogether improbable that it can agree." TEX.CODE CRIM. PROC. ANN. art. 36.31 (Vernon 1981). The exercise of discretion in declaring a mistrial is determined by the amount of time the jury deliberates considered in light of the nature of the case and evidence. *Beeman v. State,* 533 S.W.2d 799, 800 (Tex.Crim.App. 1976). The "nature of the case and the evidence" means "the type and complexity of the evidence, whether expert testimony is involved, the number of witnesses, the number of exhibits ..., the complexity of the charge, whether the jury moved towards agreement during the period of deliberation, and the nature and extent of communication from the jury." *Galvan v. State,* 869 S.W.2d 526, 528 (Tex.App.— Corpus Christi 1993, pet. ref'd).

### A. Type and Complexity of Evidence

The evidence consisted of eight witnesses presenting eyewitness testimony on two issues: (1) the traffic stop; and (2) appellant's intoxication. A videotape showing appellant's actions at the station was also introduced. This evidence presented jurors with two tasks: (1) resolving the conflict between the testimony of the arresting officer and of appellant regarding whether appellant committed a traffic offense; and (2) resolving the conflict between the testimony of all three State's witnesses and all five defense witnesses regarding whether appellant was intoxicated. The videotape provided an additional source of evidence regarding appellant's intoxication.

### B. Expert Testimony

The only expert testimony was that of the patrol officer who administered the field sobriety tests.

### C. Number of Witnesses

Eight witnesses testified about their observations of appellant. Four defense witnesses and appellant testified she was not intoxicated before being stopped. Appellant testified she did not commit a traffic offense, nor was she intoxicated when she was stopped. The arresting officer testified appellant did commit two traffic offenses and was intoxicated when stopped and during the field sobriety tests administered at the scene. Two other State's witnesses testified appellant was intoxicated at the station.

### D. Number of Exhibits

It appears that six exhibits were admitted: (1) the videotape; (2) a booking photograph of appellant; (3) a statutory warning form; (4) a document about state symbols of Texas; (5) a key map page; and (6) a different copy of the statutory warning form.

---

1. *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). An *Allen* charge attempts to break a deadlocked jury by instructing that the result of a hung jury is a mistrial and that jurors at a retrial would be faced with essentially the same decision, and encouraging the jurors to try to resolve their differences without coercing one another. *See, Simpson v. State,* 668 S.W.2d 915, 919 (Tex.App.—Houston [1st Dist.] 1984, no pet.).

## E. Complexity of the Charge

The charge presented the jury with two contested issues to resolve: (1) whether the officer had reasonable suspicion to stop appellant for not maintaining a single lane of traffic or exceeding the posted speed limit; and (2) whether appellant was intoxicated, not having the normal use of her mental and physical faculties, by reason of the introduction of alcohol into her body.

## F. Jury Movement Toward Agreement

Upon receiving the final note from the jury, indicating inability to agree and a desire to go to lunch, the trial court asked the jurors what their split was. They were split three-three. The trial court then asked if there had been substantial movement since the day before. A juror said that there had not been substantial movement. The trial court pressed for the split the day before. A juror stated it had been five-one and a half. The trial court asked who the half was, causing laughter. A juror stated there had been some undecideds then. Another juror stated there had been two undecided and two firm. The trial court asked if the jurors felt that further deliberations would produce a verdict. Each juror was asked and all agreed that further deliberations would not produce a verdict.

While the trial court did not ask if there had been any movement since 10:00 a.m., the jury had announced then that it was hung with no chance of reconciliation.

## G. Summary

The type of case here is one of the most common tried at the criminal courthouse, a no-test DWI. The two issues were straightforward, requiring the jury to decide a conflict between the arresting officer and appellant about whether appellant committed a traffic offense and between the defense witnesses and State's witnesses about whether appellant was intoxicated. The jury also considered the videotape showing appellant's actions at the station.

The jurors deliberated two hours and 15 minutes the first day, during which they also watched the videotape. The result was they were split with some decided and some undecided. After the benefit of a night at home to consider their positions, the jurors deliberated for another hour and declared they were hung, with no chance of reconciliation. Nevertheless, the trial court instructed the jury to continue deliberating another two and one-half hours. The result was a three-three split "with no end in sight."

## H. Analysis

■ Appellant notes the jury deliberations were roughly as long as the testimony. She argues that length of deliberations, standing alone, does not compel a trial court to declare a mistrial on its own motion. Appellant relies on *Grigsby v. State,* 158 Tex.Crim. 484, 257 S.W.2d 110 (App.1953). *Grigsby* was a DWI case where the jury deliberated 45 minutes before reporting they could not agree. *Id.* The trial court sent them back to deliberate, and they reported back in an hour they could not agree. *Id.* The Court of Criminal Appeals held that declaring a mistrial at that point was an abuse of discretion based on the shortness of the time of deliberations alone. *Id.* Noticeably absent from the *Grigsby* opinion is any analysis of the length of deliberations in light of the nature of the case and the evidence.

Appellant also asserts that the most important factor to consider in reviewing a trial court's discretion is whether the court considered and implemented less drastic alternatives before declaring a mistrial. No authority is cited for this proposition, and we have not noticed any authority supporting such a principle. Nevertheless, the trial court did take a less drastic alternative before declaring a mistrial when the jurors were instructed to continue deliberating after they initially announced they were hung.

During oral argument, the State presented the case of *Boone v. State,* 506 S.W.2d 227 (Tex.Crim.App.1974). In *Boone,* the evidence in an attempted burglary case had taken two and one-half hours to present. *Id.* at 228. The jury deliberations lasted one and three-quarters hours until the jury announced it was hung nine-three. *Id.* The trial court sent it back to deliberate further and an hour later they were still hung with

no change in their situation. *Id.* The trial court inquired whether further deliberation would result in a verdict and was told it would not. *Id.* The trial court declared a mistrial. *Id.* The Court of Criminal Appeals applied the correct standard of review, measuring the amount of jury deliberation time in light of the nature of the case and the evidence, and held the trial court did not abuse its discretion. *Id.*

While the amount of evidence and time of presentation were less in *Boone,* the ratio of deliberation time to evidence presentation time was the same. The manner in which the trial court instructed the jury was also very similar, as was the lack of movement in the jury split. We conclude that this case is much more like *Boone* than any of the cases upon which appellant relies. We hold the trial court did not abuse its discretion in determining the jury had been kept together for such a time as to render it altogether improbable that it could agree, and declaring a mistrial.

### State Constitution

■ Appellant argues that the double jeopardy clause of the state constitution should be more broadly construed than the United States Supreme Court has construed the double jeopardy clause of the federal constitution. *See Bauder v. State,* 921 S.W.2d 696, 699 (Tex.Crim.App.1996) (addressing the situation where a prosecutor's misconduct causes the defendant to request a mistrial). In *Bauder,* a majority of the Court of Criminal Appeals decided to give more expansive protection under the state constitution because: (1) it could not perceive any significant distinction between conduct of a prosecutor intending to cause a mistrial and conduct of a prosecutor merely aware that a mistrial is reasonably certain to result; and (2) it saw practical advantages of an objective, rather than subjective, rule. Thus, the considerations motivating the Court in *Bauder* to give more expansive double jeopardy protection for mistrials caused by prosecutorial misconduct lay in the difficulty of analyzing the specific intent of the prosecutor. These considerations have nothing to do with the issue in this case. Appellant does not give any reason why greater double jeopardy protection should be given to her in the situation where a trial court grants a mistrial on its own motion because of a deadlocked jury. Accordingly, we decline to apply any new approach appellant urges is required by the state constitution, such as the submission of an *Allen* charge before granting a mistrial.

### Conclusion

For the reasons set out above, in our traditional analysis of a trial court's discretion in granting a mistrial on its own motion based on a deadlocked jury, we hold the trial court did not abuse its discretion under the circumstances of this case. Therefore, we overrule appellant's sole point of error and affirm the trial court's denial of habeas relief.

WILSON, J., dissenting,

WILSON, Justice, dissenting.

Because I believe it was an abuse of discretion under the facts of this case for the judge to grant a mistrial sua sponte, I respectfully dissent.

The evening before granting the mistrial, the judge decided to bring the jury back to deliberate on a new day after hearing the panel was "pretty much split." Then after determining from the jury that a change in the vote on the panel had occurred during their morning deliberations, the judge dismissed the jury during the noon hour without articulating a reason into the record why the jury could not continue to deliberate during at least part of the afternoon. Further, the judge did not give the jury an *Allen* charge. In my judgment, under the facts of this case, if a jury is ordered to return for a new day of deliberation, with the resulting inconvenience to the jurors' personal lives, that it is manifest for any trial judge to give them every reasonable opportunity to reach a verdict.

To that point, the jury had considered the evidence in the case less than six hours in total, and just over two hours from the first indication that no chance of reconciliation existed. Further, neither lawyer had requested a mistrial and the jury, although indicating that it was deadlocked, had only requested a break for lunch.

My disagreement with the majority is not over the standard of review as stated, but over whether this particular set of facts rises to an abuse of discretion under those standards. I can not say that the jury was "kept together for such time as to render it altogether improbable that it can agree." TEX. CODE CRIM. P. ANN. art. 36.31 (Vernon 1981). Because I believe that a retrial of the defendant would place her twice in jeopardy for the same crime, I respectfully dissent.