PD-0098-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 2/23/2015 9:06:16 PM
Accepted 2/26/2015 3:09:56 PM
ABEL ACOSTA
CLERK

No. PD-0098-15

IN THE
COURT OF CRIMINAL APPEALS
OF TEXAS

## EDDIE MATHEWS
Petitioner

v.

**The State of Texas**
Respondent

On Appeal In Case Number 13,992
From the 21st District Court of Bastrop County
The Hon. Terry Flenniken, Presiding Judge
Third Court of Appeals No. 03-13-00037-CR

# Petition for Discretionary Review

Submitted by:

The Law Offices of Ariel Payan
1012 Rio Grande
Austin, Texas  78701
Tel.  512/478-3900
Fax:  512/472-4102

FILED IN
COURT OF CRIMINAL APPEALS

February 26, 2015

ABEL ACOSTA, CLERK

**Ariel Payan**
State Bar No. 00794430

Attorney for Petitioner

**Oral Argument Requested**

**Table of Contents**

Certificate of Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Index of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Statement Regarding Oral Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

Grounds for Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

1)    **DOES TRAP 21.3 c AND g COVER INSTANCES WHERE A JUROR VOTES GUILTY EVEN THOUGH SHE BELIEVES THE STATE FAILED TO MEET ITS BURDEN OF PROOF, AND HOW DOES TRE 606(b) APPLY, IF AT ALL?** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-

2)    **WHEN A JURY MISBEHAVES WHAT COMES FIRST THE CHICKEN, TRE 606(b) OR THE EGG, TRAP 21.3?** . . . . . . . . . . . . . . . . . . -6-

Prayer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -13-

Certificate of Delivery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-

i

Pursuant to Rule 68, Rules of Appellate Procedure ("Tex.R.App.Pro."), the following is a complete list of the names and addresses of all parties to the trial court's final judgment and their counsel in the trial court, as well as appellate counsel.

## Petitioner

Eddie Matthews
TDCJ-ID No. 01832718
Polunsky Unit
3872 FM 350 South
Livingston, TX 77351

| Appellate Counsel: | Trial Counsel: |
| --- | --- |
| PDR Counsel: | |
| Ariel Payan | Jorge Sanchez |
| 1012 Rio Grande | Mark Sampson |
| Austin, Texas 78701 | |

## State of Texas

Bryan Goertz
804 Pecan St.
Bastrop, TX 78602

| Appellate Counsel: | Trial Counsel: |
| --- | --- |
| Craig W. Cosper | |
| | Brenda Cantu |
| State Prosecuting Attorney | Mary Yvonne (Von) Bunn |
| Lisa C. McMinn | |

Judge Terry Flennikan, retired.

# Index of Authorities

**Federal Cases**:

Chambers v. Mississippi, 410 U.S. 284, 294 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-

U.S. v. McCracken, 488 F.2d 406 (Tex. 5th Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . -6-


**Texas Cases**:

Boykin v. State, 818 S.W.2d 782, 785 (Tex.Cr.App. 1991) . . . . . . . . . . . . . . . . . . . . . . . -9-

Duncan v. State, 138 Tex.Crim. 172 (Tex.Cr.App. 1940) . . . . . . . . . . . . . . . . . . . . . . . . -5-

Gomez v. State, 991 S.W.2d 870, 871 (Tex.App. Houston [1st Dist.] 1999, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -10-

Guice v. State, 900 S.W.2d 387 (Tex.App.–Texarkana 1995), (pdr re'fd) . . . . . . . . . . . -9-

Hines v. State, 3 S.W.3d 618, 622 (Tex.App.-Texarkana 1999, pet. ref'd) . . . . . . . . -4-, -8-

Jennings v. State 107 S.W.3d 85 (Tex.App.–San Antonio 2003) . . . . . . . . . . . . . . . . . . -9-

Jennings v. State, 107 S.W.3d 85 (Tex.App. –San Antonio 2003) . . . . . . . . . . . . . . -5-, -6-

Malbrough v. State, 846 S.W.2d 926 (Tex.App.– Houston [1st] 1993) . . . . . . . . . . . . . . -9-

Menard v. State, 193 S.W.3d 55, 59 (Tex.App.-Houston [1st Dist.] 2006, pet. ref'd) . . . -4-

Paulson v. State, 28 S.W.3d 570, 573 (Tex.Cr.App. 2000) . . . . . . . . . . . . . . . . . . . . . . . -6-

Quinn v. State, 958 S.W.2d 395 (Tex.Cr.1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -9-

Reyna v. State, 846 S.W.2d 498 (Tex.App. – Corpus Christi 1993) . . . . . . . . . . . . . . . . -9-

Salazar v. State, 38 S.W.3d 141 (Tex.Cr.App. 2001), certiorari denied 534 U.S. 855 . . -9-

Sanders v. State, 1 S.W.3d 885, 887 (Tex.App.-Austin 1999, no pet.) . . . . . . . . . . . . . . -8-

Stuhler v. State, 218 S.W.3d 706, 716 (Tex.Cr.App. 2007) . . . . . . . . . . . . . . . . . . . . . -11-

Thomas v. State, 352 S.W.3d 95, 102 (Tex.App.Houston [14th Dist.] 2011, pet. ref'd)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -10-

Torres v. State, 961 S.W.2d 391, 393 n. 1 (Tex.App.-Houston [1st Dist.] 1997, pet. ref'd)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -13-

Trinidad v. State, 312 S.W.3d 23, 26 & n. 16 (Tex.Cr.App. 2010) . . . . . . . . . . . . . . . -11-


**Texas Constitution**:

Tex. Const. art. V, § 139 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-


**Texas Statutes / Codes**:

T.R.A.P.  21.3 ( c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-, -10-

T.R.A.P.  21.3 (g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-, -10-

Tex.Code Crim. Proc. Ann. art. 36.29 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -10-

Tex.R.App. P. 21.3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-, -5-, -7--9-

Tex. R. Evid. 606(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-, -5-, -6-, -7-, -8-

## Statement Regarding Oral Argument

Oral Argument is Requested and would assist the Court in resolving the conflict in the lower courts and in answering any questions the Court has.

## Statement of the Case

Pursuant to Tex.R.App.Pro. 68.4(d), the following is a brief general statement of the

case:

Petitioner, Eddie Matthews, was charged by indictment with the offense of continuous sexual abuse of a child, a felony, in Cause No. 13,992 in the 21st District Court of Bastrop County, Texas. He was convicted in said cause and was sentenced to 50 years incarceration. The Court of Appeals held that there was no outside influence.

## Statement of Procedural History

Pursuant to Tex.R.App.Pro. 68.1(d), Petitioner would show the following:

The Third Court of Appeals denied Petitioner's appeal on December 23, 2014.

The Third Court of Appeals has decided an important question of state and federal law that has not been, but should be, settled by this Court.
The Third Court of Appeals has misapplied a statute in deciding this case; and,

## Grounds for Review

Pursuant to Tex.R.App.Pro. 68.4(f), the following are the reasons this petition should be heard

1) **DOES TRAP 21.3 c AND g COVER INSTANCES WHERE A JUROR VOTES GUILTY EVEN THOUGH SHE BELIEVES THE STATE FAILED TO MEET ITS BURDEN OF PROOF, AND HOW DOES TRE 606(b) APPLY, IF AT ALL?**

2) **WHEN A JURY MISBEHAVES WHAT COMES FIRST THE CHICKEN, TRE 606(b) OR THE EGG, TRAP 21.3?**

No. PD-0098-15

IN THE
COURT OF CRIMINAL APPEALS
OF TEXAS

**EDDIE MATHEWS**
Petitioner

v.

**The State of Texas**
Respondent

On Appeal In Case Number 13,992
From the 21st District Court of Bastrop County
The Hon. Terry Flenniken, Presiding Judge
Third Court of Appeals No. 03-13-00037-CR

# Petition for Discretionary Review

TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS:

COMES NOW, Eddie Matthews, Petitioner in the above styled and numbered cause, by and through Ariel Payan, his undersigned attorney of record, and respectfully files this "Petition for Discretionary Review," filed pursuant to Tex.R.App.Pro. 68.

## Argument

**1)** **DOES TRAP 21.3 c AND g COVER INSTANCES WHERE A JUROR VOTES GUILTY EVEN THOUGH SHE BELIEVES THE STATE FAILED TO MEET ITS BURDEN OF PROOF, AND HOW DOES TRE 606(b) APPLY, IF AT ALL?**

Texas Rule of Appellate Procedure 21.3 states in pertinent part that a new trial must be granted: (c) "when the verdict has been decided by lot or in any manner other than a fair expression of the jurors' opinion; and, (g) when the jury has engaged in such misconduct that the defendant did not receive a fair and impartial trial." T.R.A.P. 21.3. If a juror has been coerced, bribed or threatened by someone outside the jury then it is an 'outside influence' which will warrant testimony by a juror as to what occurred. See T.R.E. 606(b). When the coercion, bribery or threat comes from within the jury no such investigation can occur, but 21.3 is still violated. The current state of the law does not allow for evidence to be presented to effectuate TRAP 21.3c and g. To preserve error caused by juror misconduct, the defendant must either move for a mistrial or move for a new trial supported by affidavits of a juror or other person in a position to know the facts alleging misconduct, this is in direct opposition to the current status of the law. See Menard v. State, 193 S.W.3d 55, 59 (Tex.App.-Houston [1st Dist.] 2006, pet. ref'd); compare, Hines v. State, 3 S.W.3d 618, 622 (Tex.App.–Texarkana 1999, pet.ref'd).

Here a juror testified that she voted guilty only because of the threats and coercion of another juror. (R.R. Vol. 7, pg. 18). The Third Court of Appeals held that because no

evidence was offered to show an 'outside influence' pursuant to TRE 606(b), no competent evidence was presented for review. The appellate court never mentioned the multiple grounds raised under TRAP 21.3. The analysis used by the lower court started and ended with the restrictions contained in TRE 606(b).

This Court as well as some of the lower courts have allowed the admission of juror testimony to prove a violation of a jury verdict by some manner other than a fair expression of the jurors' opinion. In Duncan v. State, 138 Tex.Crim. 172 (Tex.Cr.App. 1940), this Court held that the "the statute is mandatory and directs that a new trial shall be granted: 'Where the verdict has been decided by lot, or in any other manner than by a fair expression of opinion by the jurors.'" In that case the Court reviewed the testimony of jurors in the trial to determine that an improper method of sentencing had been used by the jurors, requiring a reversal. The information, which is the basis of the Court's decision, originated from testimony provided by jurors in the case. The language of the statute in place during the Duncan decision is virtually identical to the language contained in TRAP 21.3 c.

In Jennings v. State, 107 S.W.3d 85 (Tex.App. –San Antonio 2003), the court of appeals held that it was reversible error for a jury to vote guilty when she believed that the state failed to prove their case. The defendant in that case filed a motion for new trial, with a supporting affidavit from a juror, wherein the juror stated that she changed her vote to guilty even though she did not believe the defendant was guilty because the jury had made an agreement. The agreement was that they would create two lists, one of factors that supported

a guilty verdict and one wherein they listed the reasons against, and then be bound by whatever list was longer. This agreement denied the defendant a fair expression of the juror's opinion as to the weight of the evidence presented by the State, and such was harmful to the defendant's constitutional rights. The appellate court reversed and remanded for a new trial. Jennings, 107 S.W.3d at 90.

A juror's fair expression of their opinion and individual verdict of whether an individual is guilty or not guilty is the cornerstone of all criminal trials. See, U.S. v. McCracken, 488 F.2d 406 (Tex. 5th Cir. 1974). These cases cited above all deal with what happens when a jury decides to render a verdict based upon something other than individual determination of guilt. Because we no longer have a definition of beyond a reasonable doubt, each juror must decide for themselves what that term means, and the courts must abide by that determination. Paulson v. State, 28 S.W.3d 570, 573 (Tex.Cr.App. 2000). Allowing a verdict to stand when a juror specifically has stated that the verdict does not reflect their opinion is a violation of 21.3, which requires a mandatory reversal. By not allowing the evidence from the juror to be reviewed the lower court has negated TRAP 21.3 c and g, and misapplied TRE 606(b).

**2) WHEN A JURY MISBEHAVES WHAT COMES FIRST THE CHICKEN, TRE 606(b) OR THE EGG, TRAP 21.3?**

The chicken, Texas Rule of Evidence 606(b) provides:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the jury's deliberations, or to the effect of anything on any juror's mind or emotions or mental processes, as influencing any juror's assent to or dissent from the verdict or indictment. Nor may a juror's affidavit or any statement by a juror concerning any matter about which the juror would be precluded from testifying be admitted in evidence for any of these purposes. However, a juror may testify: (1) whether any outside influence was improperly brought to bear upon any juror; or (2) to rebut a claim that the juror was not qualified to serve.

Tex.R. Evid. 606(b). The egg, the quintessential beginning, rule of appellate procedure provide that a defendant must be granted a new trial or a new trial on punishment when certain conditions are met. Tex.R.App. P. 21.3. Texas Rules of Appellate Procedure, Rule 21.3 provides:

> The defendant must be granted a new trial, or a new trial on punishment, for any of the following reasons:
>
> (a) except in a misdemeanor case in which the maximum possible punishment is a fine, when the defendant has been unlawfully tried in absentia or has been denied counsel;
>
> (b) when the court has misdirected the jury about the law or has committed some other material error likely to injure the defendant's rights;
>
> (c) when the verdict has been decided by lot or in any manner other than a fair expression of the jurors' opinion;
>
> (d) when a juror has been bribed to convict or has been guilty of any other corrupt conduct;

(e)      when a material defense witness has been kept from court by force, threats, or fraud, or when evidence tending to establish the defendant's innocence has been intentionally destroyed or withheld, thus preventing its production at trial;

(f)      when, after retiring to deliberate, the jury has received other evidence; when a juror has talked with anyone about the case; or when a juror became so intoxicated that his or her vote was probably influenced as a result;

(g)      when the jury has engaged in such misconduct that the defendant did not receive a fair and impartial trial; or

(h)      when the verdict is contrary to the law and the evidence.

T.R.A.P. 21.3. Appellate courts have determined that these two provisions do not conflict with each other as it relates to 'outside influence'. Rule 606(b) does not purport to redefine juror misconduct, not does it alter the grounds for obtaining a new trial in criminal cases. See Sanders v. State, 1 S.W.3d 885, 887 (Tex.App.-Austin 1999, no pet.). Rules 606(b) and 21.3(c) work together to define jury misconduct and how a defendant may prove the existence of such conduct. Hines v. State, 3 S.W.3d 618, 622 (Tex.App.-Texarkana 1999, pet. ref'd). Rule 606(b) defines what evidence is admissible in proving evidence of outside influences improperly brought to bear on a juror, while rule 21.3 lists the permissible areas of whereby a defendant must get a new trial.

In this analogy the chicken (606(b)), limits the potential of the egg. TRE 606(b) deals with what evidence is permissible in proving only 21.3 (f), the other seven mandatory areas of inquiry for a new trial are not contemplated by this rule of evidence.

There are many forms of jury misconduct recognized by Texas appellate courts. Jurors commenting upon a defendant's failure to testify can constitute misconduct under TRAP 21.3. Reyna v. State, 846 S.W.2d 498 (Tex.App. – Corpus Christi 1993). It is improper for jurors to conduct experiments or demonstrations in jury room after beginning deliberations. Guice v. State, 900 S.W.2d 387 (Tex.App.–Texarkana 1995), (pdr re'fd). Juror bias expressed outside of voir dire context may constitute misconduct that will support grant of new trial. Quinn v. State, 958 S.W.2d 395 (Tex.Cr.1997). Jury misconduct based on juror's affidavit stating jury determined defendant's guilt by making a list of facts that made him guilty and a list of facts that made him not guilty and then agreed to be bound to vote in accordance with the longer of the two lists. Jennings v. State 107 S.W.3d 85 (Tex.App.–San Antonio 2003). Jury misconduct when after retiring to deliberate, jury received other evidence. Guice v. State 900 S.W.2d 387 (Tex.App.–Texarkana 1995), petition for discretionary review refused. Jury's discussion of parole constitutes jury misconduct and reversible error. Salazar v. State, 38 S.W.3d 141 (Tex.Cr.App. 2001), certiorari denied 534 U.S. 855. Jury misconduct where jury agrees to adopt and be bound by so-called "quotient verdict," or "verdict by lot," defendant is entitled to new trial. Malbrough v. State, 846 S.W.2d 926 (Tex.App.– Houston [1st] 1993), petition for discretionary review refused. Boykin requires appellate courts to construe a statute in accordance with the plain meaning of its literal text unless the language of the statute is ambiguous or the plain meaning leads to absurd results. Boykin v. State, 818 S.W.2d 782, 785 (Tex.Cr.App. 1991). This string of

cases show that Texas appellate courts have given meaning to the many of the other provisions of 21.3 outside of 21.3(f). Most of which are not contemplated in the limits contained in TRE 606(b).

Rule 21.3(c) requires a trial court to grant a motion for new trial "when the verdict has been decided by lot or in any manner other than a fair expression of the jurors' opinion." See, T.R.A.P. 21.3 ( c). Rule 21.3(g) requires a trial court to grant a motion for new trial "when the jury has engaged in such misconduct that the defendant did not receive a fair and impartial trial." See, T.R.A.P. 21.3 (g). To demonstrate jury misconduct, the defendant must show that (1) the misconduct occurred and (2) the misconduct resulted in harm to the movant. Thomas v. State, 352 S.W.3d 95, 102 (Tex.App.Houston [14th Dist.] 2011, pet. ref'd); Gomez v. State, 991 S.W.2d 870, 871 (Tex.App. Houston [1st Dist.] 1999, pet. ref'd).

At the motion for new trial, juror Lynn Carpenter testified. Carpenter testified that she was one of the juror's in Appellant's case. (R.R. Vol. 7, pg. 15). She stated that the jury deliberated for ten to twelve hours. (R.R. Vol. 7, pg. 17). Carpenter testified that one of the jurors had threatened and coerced jurors to change their verdict. (R.R. Vol. 7, pg. 18). Carpenter stated that she became afraid of a physical altercation in the jury room between two of the jurors. This confrontation changed the jurors vote. (R.R. Vol. 7, pg. 19). The actions of this juror caused her to change her vote.

Carpenter also testified that another juror had made representations of being an expert in the area of Child Protective Services. (R.R. Vol. 7, pg. 21). The jurors were discussing

-9-

how CPS works, and that no evidence had been introduced that discussed this, or why the children in this case had not been removed, and this particular juror interjected her beliefs regarding CPS. The other jurors thanked this juror on clarifying the process and that information was then used in their decision making process. (R.R. Vol. 7, pg. 21). Carpenter testified that no one told this particular juror not to discuss it because it was not in evidence. (R.R. Vol. 7, pg. 22-23). The jurors did discuss the jury charge which required them not to discuss anything outside of the evidence presented at the trial. This particular juror ignored the instruction and continued to discuss these issues to the jury as a whole. (R.R. Vol. 7, pg. 24)

Carpenter also stated that she had voted 'not guilty' the entire time, because she did not believe the state had met its burden of proof. (R.R. Vol. 7, pg. 25). Carpenter testified that she changed her vote only because of the 'overwhelming' pressure she felt from the confrontational juror to change her vote. The other jurors kept telling her that they wanted to go home and this also caused undue pressure on her to change her vote. (R.R. Vol. 7, pg. 25). The Texas Constitution requires that a jury verdict in a felony case be unanimous, and under state statutes, unanimity is required in all criminal cases. Tex. Const. art. V, § 139; Tex.Code Crim. Proc. Ann. art. 36.29; Stuhler v. State, 218 S.W.3d 706, 716 (Tex.Cr.App. 2007). From its inception in 1876, article V, section 13, has required that "petit juries in the District Court shall be composed of twelve" members. Trinidad v. State, 312 S.W.3d 23, 26 & n. 16 (Tex.Cr.App. 2010) (citing Tex. Const. art. V, § 13). The coercion and misconduct

in the jury room denied Appellant's right to a unanimous jury verdict. Finally, Carpenter testified that one of the jurors discussed the appellate process during deliberations. (R.R. Vol. 7, pg. 28).

In addition, the affidavit of another juror Lance Etzel was reviewed by the trial judge. Etzel's affidavit supported the testimony of Ms. Carpenter. Etzel affirmed that one of the female jurors was "quite abusive, domineering and overpowering." Etzel, a Bastrop County Sheriff, had to step in and ask her to step away from one of the other female jurors whom she was physically intimidating. C.R. pg. 273. Etzel also spoke about the other juror who was making representations of being an 'expert' in CPS matters. Etzel stated that the entire jury relied upon her assertions and in the end this information helped sway the jury and "This information ultimately affected the final verdict." C.R. pg. 274. Etzel also stated that had it not been for these jurors he would not have changed his verdict to guilty, and he would have remained a not guilty vote. Due process includes the right to a fair opportunity to defend against the State's accusations, including presenting, confronting, and cross-examining witnesses. See Chambers v. Mississippi, 410 U.S. 284, 294 (1973). The evidence presented inside the jury room violated Appellant's due process rights, because it denied him the opportunity to confront, cross and test the statements of the juror. The testimony of both jurors was uncontroverted at the hearing.

There was in essence, four forms of misconduct by two different jurors which led to a denial of the fair expression of the jurors' opinion and which led to Appellant not receiving

-11-

a fair and impartial trial. The first was the coercive, abusive, and intimidating actions of a juror which forced at least one juror to change her verdict and nullify that jurors opinion of the evidence and her decision that the State failed to meet its burden of proof. Even in situations where a jury is deadlocked, and the trial court gives an Allen charge in an attempt to reach a verdict, the jury is still specifically instructed not to 'coerce' another juror. See Torres v. State, 961 S.W.2d 391, 393 n. 1 (Tex.App.-Houston [1st Dist.] 1997, pet. ref'd). The second, was the actions of another juror in professing to be an expert and 'testifying' to the other jurors about issues that were not brought up from the witness stand. This not only violated Appellant's rights to due process and equal protection but also to the right of confrontation and cross examination of information considered by the jury during deliberations. The third area, was the jurors failure to follow the jury instructions provided to them. The jurors were specifically instructed not to discuss information not provided to them from the witness stand, and this juror ignored the instruction and discussed the CPS issues, which the jury ended up accepting as accurate and using in their deliberations. The final area was the discussion of the appellate process, like erroneous discussions of parole law, such issues are not proper fodder for deliberations. The Third Court of Appeals did not review any of these issues.

All of these individual acts of misconduct separately and in combination led to a denial of Appellant's Constitutional rights. Appellant did not receive a fair and impartial trial due

to the actions of these two jurors, and he was harmed by these acts such that his case should

be reversed and remanded back to the trial court for a new trial.

## Prayer

WHEREFORE, PREMISES CONSIDERED, EDDIE MATTHEWS, Petitioner in the above styled and numbered cause respectfully prays that this Court grant this Petition for Discretionary Review, set this cause for oral argument so that this Court may grant any and all relief to which Petitioner is entitled.

Respectfully submitted,

**ARIEL PAYAN**
Attorney at Law
1012 Rio Grande
Austin, Texas  78701
Tel.  512/478-3900
Fax: 512/472-4102

by: ___/s/ Ariel Payan_____
**Ariel Payan**
State Bar No. 00794430

Attorney for Petitioner

## Certificate of Delivery

This is to certify that a true and correct copy of the above and foregoing "Petition for Discretionary Review" was hand-delivered, mailed postage pre-paid or transmitted via telecopier (*fax*) to the  office of the District Attorney of Bastrop County, Texas, Attorney General's Office, and to the State Prosecuting Attorney's Office.

-13-

/s/  Ariel Payan

**Ariel Payan**

## Certificate of Compliance

I hereby certify pursuant to T.R.A.P. 9.4(i)(3), the word count for this document, as determined by the word processing program is ___2871___ .

/s/ Ariel Payan

**Ariel Payan**

**APPENDIX**

2014 WL 7466653
Only the Westlaw citation is currently available.

SEE TX R RAP RULE 47.2 FOR DESIGNATION AND SIGNING OF OPINIONS.

MEMORANDUM OPINION
DO NOT PUBLISH
Court of Appeals of Texas, Austin.

Eddie Matthews, Appellant
v.
The State of Texas, Appellee
NO. 03–13–00037–CR | Filed: December 23, 2014

**FROM THE DISTRICT COURT OF BASTROP COUNTY, 21ST JUDICIAL DISTRICT, NO. 13992, THE HONORABLE TERRY L. FLENNIKEN, JUDGE PRESIDING**

**Attorneys and Law Firms**

Craig W. Cosper, Assistant Attorney General, Austin, TX, for State.

Ariel Payan, The Law Offices of Ariel Payan, Austin, TX, for Appellant.

Before Chief Justice Jones, Justices Pemberton and Rose

*MEMORANDUM OPINION*

J. Woodfin Jones, Chief Justice

**\*1** A jury found appellant Eddie Matthews guilty of continuous sexual abuse of a young child for sexually abusing his eight-year-old stepdaughter. *See* Tex. Penal Code § 21.02(b), (c)(4). The trial court assessed appellant's punishment at confinement for 50 years in the Texas Department of Criminal Justice. *See id.* § 21.02(h). In two points of error on appeal, appellant complains about the denial of his motion for new trial and asserts that the evidence is insufficient to support his conviction. Because the parties are familiar with the facts of the case, its procedural history, and the evidence adduced at trial, we do not recite them in this opinion except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* Tex.R.App. P. 47.1, 47.4. We affirm the trial court's judgment of conviction.

## DISCUSSION

**Motion for New Trial**

Appellant filed a motion for new trial alleging juror misconduct.[1] Attached to the motion was the affidavit of juror L.E. In his affidavit, L.E. expressed "concern about several of the problems that [he] witnessed during jury deliberations." He first described a female juror who was "quite abusive, domineering and overpowering," and he opined that she intimidated jurors into changing their votes. L.E. also recalled that another juror "shared her opinions continually" about "how CPS worked" based on knowledge she apparently obtained through her employment at a juvenile facility. He stated that "the entire jury including [L.E.] ultimately relied and swayed in the direction of guilty based on her information," viewing it as information "coming from an 'expert.' " L.E. also claimed that the jury "obviously misconstrued" the judge's instruction to keep deliberating after the jurors informed the court that they were deadlocked. He opined that the court's instruction, in connection with the lengthy deliberations, "put increased pressure on jurors" because they "were

under the belief that [they] could not leave until a verdict either way was reached," and they were tired and wanted to leave. L.E. concluded his affidavit by averring that but for "these issues" "happening during the deliberations," appellant would not have been found guilty.

From the start, the State opposed appellant's motion for new trial. The State filed a *Motion to Strike Juror Affidavit and Deny Defendant's Motion for New Trial,* which asserted that L.E.'s affidavit did not raise claims of an outside influence and thus his affidavit was impermissible jury testimony and should not be considered by the trial court. At the hearing on the motion for new trial, appellant asked the court to take judicial notice of L.E.'s affidavit and called another juror, L.C., as his sole witness. Once again, the State opposed the motion, arguing that there was no legal basis for a hearing because the evidence appellant sought to offer was not evidence of an outside influence but only of what transpired during jury deliberations and was thus prohibited by Rule 606(b) of the Texas Rules of Evidence. The trial court impliedly overruled the State's objection by permitting the hearing to proceed, "noting" L.E.'s affidavit, and allowing L.C. to testify.

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.

**\*2** In her testimony, L.C. described an incident in which a juror who was "so overbearing," "upset," and "loud" physically confronted another juror who disagreed with her. L.C. indicated that the confrontation "definitely" changed the second juror's vote. L.C. also testified about another juror who worked with juveniles in some capacity who brought up information about "how CPS works." She said that other jurors expressed appreciation about this juror's clarification of the CPS process and relied on "her expertise" to help them "determine what they needed to." L.C. also indicated that at some point "the appellate process" was referenced during deliberations. Finally, L.C. testified that she was the hold-out juror, the last to change her vote from "not guilty" to "guilty," and said that she changed her vote (even though she believed appellant was not guilty) because the pressure she felt was "overwhelming to [her]" and "they were all waiting for me." On cross-examination, L.C. conceded that she did ultimately vote to find appellant guilty and that she sat silent when the verdict was announced in open court, not contradicting it.

The State objected to the content of L.C.'s testimony multiple times throughout her testimony based on Rule of Evidence 606(b). After L.C. testified, the State maintained that the

evidence presented by appellant simply demonstrated "buyer's remorse," and reasserted that none of the evidence related to an improper outside influence and was, therefore, inadmissible juror testimony. *See Colyer v. State,* 428 S.W.3d 117, 124 (Tex.Crim.App.2014) ( "The most common, but disallowed, means to impeach the jury's verdict is the 'disgruntled juror.' "). The trial court denied the motion for new trial without comment. In his first point of error, appellant argues that the trial court abused its discretion in denying his motion.

We review a trial court's denial of a motion for new trial for an abuse of discretion. *Colyer,* 428 S.W.3d at 122; *Salazar v. State,* 38 S.W.3d 141, 148 (Tex.Crim.App.2001). In conducting our review, we may not substitute our judgment for that of the trial court; rather, we decide only whether the trial court's decision was arbitrary or unreasonable. *Colyer,* 428 S.W.3d at 122; *Holden v. State,* 201 S.W.3d 761, 763 (Tex.Crim.App.2006). A trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling. *Colyer,* 428 S.W.3d at 122; *Holden,* 201 S.W.3d at 763.

A motion for new trial alleging jury misconduct must be supported by the affidavit of a juror or other person who is in a position to know the facts. *Trout v. State,* 702 S.W.2d 618, 620 (Tex.Crim.App.1985); *see Castillo v. State,* 319 S.W.3d 966, 970 (Tex.App.–Austin 2010, pet. ref'd). Under Rule of Evidence 606(b), however, a juror may only testify regarding outside influences improperly brought to bear upon a juror or to rebut a claim the juror was not qualified to serve. Tex.R. Evid. 606(b). A juror may not testify about matters occurring during juror deliberations, or to the effect of anything on any juror's mind, emotions, or mental processes. *Id.*; *McQuarrie v. State,* 380 S.W.3d 145, 154 (Tex.Crim.App.2012). "Thus, a juror is not permitted to testify about any events or statements occurring during jury deliberations, any of the jurors' mental processes, or how an improper outside influence *actually* affected the jurors."[2] *Colyer,* 428 S.W.3d at 123 (emphasis added).

**\*3** Here, L.E.'s affidavit and L.C.'s testimony at the hearing were composed solely of impermissible juror testimony. Neither the affidavit nor the in-court testimony established the requisite outside influence to support a claim of juror misconduct. All of the events, statements, and processes described in the affidavit and testimony emanated from inside the jury. "[A]n 'outside influence' is 'something originating from a source outside of the jury room and other than from the jurors themselves.' " *Colyer,* 428 S.W.3d at 125 (quoting *McQuarrie,* 380 S.W.3d at 154). The outside-influence exception does not include influences such as coercion by a fellow juror or the discussion of a juror's own personal knowledge. *Id.* The affidavit and testimony offered by appellant relate exclusively to events and conversations that took place in the jury room and among the jurors themselves, to how individual jurors felt "pressured" or believed other jurors felt pressured, and to the jurors' personal understanding (or misunderstanding) of the deliberations process and the court's instructions. They do not allege the exertion of any "outside influence" as interpreted by the Texas Court of Criminal Appeals. Consequently, L.E.'s affidavit and L.C.'s testimony were inadmissible under Rule 606(b). *See* Tex.R. Evid. 606(b) ("Nor may a juror's affidavit or any statement by a juror concerning any matter about which the juror would be precluded from testifying be admitted in evidence for any of these purposes."); *Colyer,* 428 S.W.3d at 125 ("Except for (1) an 'outside influence' as defined in *McQuarrie* that is (2) 'improperly brought to bear' upon a juror, Rule 606(b) continues to

-4-

prohibit juror testimony to impeach a verdict.").

Because appellant did not offer any competent evidence in support of his argument that juror misconduct occurred, we cannot say that the trial court's decision to deny the motion for new trial was arbitrary or unreasonable. Accordingly, we overrule appellant's first point of error.

### Sufficiency of the Evidence

In his second point of error, appellant challenges the sufficiency of the evidence to support his conviction for continuous sexual abuse of a young child.

Due process requires that the State prove, beyond a reasonable doubt, every element of the crime charged. *Jackson v. Virginia,* 443 U.S. 307, 313 (1979); *Rabb v. State,* 434 S.W.3d 613, 616 (Tex.Crim.App.2014). When reviewing the sufficiency of the evidence to support a conviction, we consider all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson,* 443 U.S. at

319; *Rabb,* 434 S.W.3d at 615; *Brooks v. State,* 323 S.W.3d 893, 899 (Tex.Crim.App.2010). We review all the evidence in the light most favorable to the verdict and assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Jackson,* 443 U.S. at 318; *see Laster v. State,* 275 S.W.3d 512, 517 (Tex.Crim.App.2009). We consider only whether the jury reached a rational decision. *Isassi v. State,* 330 S.W.3d 633, 638 (Tex.Crim.App.2010) ("Our role on appeal is restricted to guarding against the rare occurrence when a factfinder does not act rationally." (quoting *Laster,* 275 S.W.3d at 518)).

As exclusive judge of the facts, the jury is entitled to weigh and resolve conflicts in the evidence and draw reasonable inferences therefrom.*Clayton v. State,* 235 S.W.3d 772, 778 (Tex.Crim.App.2007); *see* Tex.Code Crim. Proc. arts. 36.13, 38.04. The jury is also free to accept or reject any or all of the evidence presented by either side. *See Lancon v. State,* 253 S.W.3d 699, 707 (Tex.Crim.App.2008); *Wesbrook v. State,* 29 S.W.3d 103, 111 (Tex.Crim.App.2000). Thus, when the record supports conflicting inferences, we must presume that the trier of fact resolved any such conflicts in favor of

the verdict and defer to that resolution. *Jackson,* 443 U.S. at 326; *Anderson v. State,* 416 S.W.3d 884, 888 (Tex.Crim.App.2013).

A person commits the offense of continuous sexual abuse of a young child if (1) during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse; and (2) at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is a child younger than 14 years of age. Tex. Penal Code § 21.02(b). An "act of sexual abuse" is an act that violates one or more specified penal laws, including section 22.021, entitled "Aggravated Sexual Assault." *Id.* § 21.02(c)(4). A person commits the offense of aggravated sexual assault if the person intentionally or knowingly

**\*4** • causes the penetration of the anus or sexual organ of a child by any means;

• causes the penetration of the mouth of a child by the sexual organ of the actor;

• causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor;

• causes the anus of a child to contact the mouth, anus, or sexual organ of another person, including the actor;

• causes the mouth of a child to contact the anus or sexual organ of another person, including the actor;

• and the child is under 14 years of age.

*Id.* § 22.021(a)(1)(B)(i)-(v), (2)(B). In this case, the indictment alleged that on more than one occasion during a period of 30 days or more between January 6, 2009 and January 31, 2010, appellant intentionally or knowingly (1) penetrated J.W.'s sexual organ with his penis, (2) caused J.W.'s sexual organ to contact his penis, (3) penetrated J.W.'s mouth with his penis, and (4) caused J.W.'s sexual organ to contact his mouth. The indictment also alleged that during these acts appellant was 17 years of age or older and J.W. was a child younger than 14 years of age.

J.W. was 11 years old at the time of trial. She testified that appellant—whom she called "Daddy" because he married her mother when

-6-

she was very young and was the only father she knew—"raped [her]" when she was eight. She explained that appellant would wake her up at night when she was asleep in her room and "put his private in [her] privates," which hurt. She clarified that by his "private" she was referring to appellant's penis and her "private" was her vagina. When asked how many times this happened, J.W. said, "A lot." She said that when appellant would do this, he "would get stuff on her" that came from his private that she had to wash off. J.W. also testified that appellant "put his private in [her] mouth," which made her feel "uncomfortable," and asked her "to suck" it. She said that appellant showed her "nasty pictures" of "other people's privates" (privates touching privates) on his phone.[3] J.W. testified that on one of the occasions when appellant put his private in her private, her mother walked into her room and saw them. She said that after that, appellant stopped "for a long time" but started again after her birthday on January 6th. Thus, J.W. described multiple instances in which appellant committed acts of sexual abuse as alleged in the indictment. *See* Tex. Penal Code §§ 21.02(b); 22.021(a)(1)(B). She provided specific facts and sensory details when testifying about what happened, where it happened, and (in general terms) when it happened. Arguably, because

J.W. was under 17 years of age at the time of the incidents, her testimony alone is sufficient to support appellant's conviction for continuous sexual abuse of a young child. *See* Tex.Code Crim. Proc. art. 38.07(a), (b)(1); *Martinez v. State,* No. 10–14–00035–CR, 2014 WL 5094104, at *3 (Tex.App.–Waco Oct. 9, 2014, pet. filed) (mem. op., not designated for publication) ("The testimony of a child victim alone is sufficient to support a conviction for continuous sexual abuse of a child."); *see also Williams v. State,* 305 S.W.3d 886, 890 n.7 (Tex.App.–Texarkana 2010, no pet.) (finding evidence to be legally sufficient to support finding that two or more acts of sexual abuse occurred over span of 30 days or more when child said she was abused "more than once," and noting that child victim's inability to articulate exact dates of abuse is precisely situation legislature considered when it enacted section 21.02 of Texas Penal Code). However, other evidence at trial combined with J.W.'s testimony to support the jury's verdict of guilt.

**\*5** J.W. told the sexual assault nurse examiner (SANE) who examined her that appellant had "touched [J.W.] in a place where [she's] not supposed to be touched." The nurse testified that J.W. explained that appellant put his private inside her privates more than once. The nurse also testified that J.W. described

appellant ejaculating, and told her that appellant showed her pictures on his phone.

The forensic interviewer from the children's advocacy center testified as the outcry witness. *See* Tex.Code Crim. Proc. art. 38.072. She said that J.W. was "very, very emotional" as she described appellant "touching her in the wrong places." The interviewer testified that J.W. identified private places on a body drawing, and said that when she was eight appellant put his private (which he called his "dick") in her privates (which appellant called her "pussy"). J.W. told the interviewer that this happened "a lot of times." She disclosed that appellant asked her to "rub his balls" while he put his private in her private, and talked about appellant "using his tongue on her pussy." She also told the forensic interviewer that her mother saw it happen one morning. In addition, during the interview J.W. gave a demonstration of appellant's hand actions on his private when he was putting it in her privates, mimicking appellant masturbating. J.W. also reported that appellant had shown her pictures on his phone "of adult men and women where she could see their privates." The interviewer testified that J.W. said that the abuse stopped for five weeks but then started back up,

and that the last time was in January 2010.

J.W.'s mother, J.S., also testified at trial. She described the occasion when she walked into J.W.'s room one morning and saw appellant with her daughter. She testified that her daughter was lying on her bed wearing only her pajama top with her legs bent over the side of the mattress (but her feet did not reach the ground because she was not tall enough). Appellant was standing naked between J.W.'s legs with his underwear down around his ankles. J.S. said that appellant "had his hand holding his penis and it was erected [sic] and he was rubbing it up and down in between her—her—her privates." She testified that this incident happened on October 14, 2009 and that J.W. was eight years old. J.S. also said that when she caught appellant in this compromising position with her daughter, he pulled up his underwear and left the room. As he passed her, he threw his hands up in the air and said, "You caught me. And I'm glad you caught me, and it's over with." According to J.S., during the conversation that followed, appellant admitted that he began sexually abusing J.W. in January 2009. He admitted to her that "he had put it in her mouth and that he had ejaculated on her and that he had just rubbed it on her."

Although J.W. was not able to provide exact dates during her testimony of when appellant put his private in her privates or when appellant put his private in her mouth, based on her mother's testimony about the date she discovered appellant with her daughter (October 14, 2009) and J.W.'s testimony at trial (and statements to the forensic interviewer) that the abuse stopped after the incident her mother witnessed but resumed after her birthday (January 6, 2010), the jury could have reasonably concluded that appellant perpetrated two or more acts of sexual abuse against J.W. over a span of 30 days or more. Viewing the evidence summarized above in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have found the essential elements of this offense beyond a reasonable doubt.

**\*6** In his brief, appellant reiterates the defense at trial that J.W. "was tampered with" by her mother, and cites to evidence at trial concerning possible motives of J.S. for falsely accusing appellant, including her mental-health issues, her infidelity in her marriage to appellant, and her desire to "hurt" appellant and have leverage to maintain custody of their children in the divorce.[4] However, as

noted previously, the jury, as exclusive judge of the facts, was free to reject any or all of the evidence presented by the defense. *See Lancon,* 253 S.W.3d at 707; *Wesbrook,* 29 S.W.3d at 111; *see also* Tex.Code Crim. Proc. arts. 36.13, 38.04. When the record supports conflicting inferences, as it does here, we must presume that the trier of fact resolved any such conflicts in favor of the verdict and defer to that resolution. *See Jackson,* 443 U.S. at 326; *Anderson,* 416 S.W.3d at 888. Accordingly, we presume that the jury rejected appellant's manipulation defense.

Also in his brief, appellant suggests that the evidence is insufficient to support his conviction for sexually abusing J.W. because the record demonstrates that "the state had failed to meet its burden of proof as to at least two jurors at trial," referring to the affidavit and testimony of two jurors that appellant relied on to prove juror misconduct as alleged in his motion for new trial. *See* discussion *supra* at 2–3. Appellant's contention is without merit. The sufficiency of the evidence to support a conviction is not dependent on, or related to, how individual jurors feel about their guilty verdict after the fact. Evidence is sufficient to support a conviction when, based on the evidence and reasonable inferences therefrom, any rational fact-finder

could have found the essential elements of the offense beyond a reasonable doubt. *Jackson,* 443 U.S. at 319; *Anderson,* 416 S.W.3d at 888. As we have concluded, based on the evidence presented at trial, a rational trier of fact could have found that appellant committed two or more acts of sexual abuse against his stepdaughter over a span of 30 or more days. Therefore, the evidence is sufficient to support appellant's conviction. We overrule appellant's second point of error.

## CONCLUSION

Finding no abuse of discretion in the trial court's denial of appellant's motion for new trial, and finding the evidence sufficient to support his conviction for continuous sexual abuse of a young child, we affirm the trial court's judgment of conviction.

Footnotes

1    In his motion, appellant also asserted that "[t]he verdict [was] contrary to the law and the evidence." This ground was not raised at the hearing on the motion for new trial or addressed by the trial court. Nor does appellant raise this argument in his complaint about the trial court's denial of his motion for new trial.

-10-

2    Testimony about the existence of an outside influence would be permissible under the rule. *See* Tex.R. Evid. 606b) ("[A] juror may testify whether any outside influence was improperly brought to bear upon any juror."). However, testimony about the particular effect such an outside influence had on any particular juror is improper. *See Colyer v. State,* 428 S.W.3d 117, 129–30 (Tex.Crim.App.2014) ("Courts use the objective 'reasonable person' test to decide what effect the particular 'outside influence' in a case would have on the hypothetical average juror. We do not allow testimony about the effect had upon [a] particular juror." (footnotes omitted)).

3    Evidence at trial showed that a computer forensics examination of appellant's cell phone revealed portions of a deleted pornographic video of two adults engaging in sexual intercourse that was on the phone in November 2009. The analyst testified that when paused the video depicts an image that appears on the phone as a picture.

4    The record reflects that in addition to J.W. and her sister, who were not appellant's biological daughters, appellant and J.S. had two sons together.

---

**End of Document**     © 2015 Thomson Reuters. No claim to original U.S. Government Works.